### SERVICE EMPLOYMENT REDEVELOPMENT,
Appellant

v.

### FORT WORTH INDEPENDENT SCHOOL DISTRICT,
Appellee.

No. 2–03–116–CV.

Court of Appeals of Texas, Fort Worth.

March 3, 2005.

Rehearing En Banc Overruled April 14, 2005.

Rehearing En Banc Overruled May 12, 2005.

---

5. Because we have determined that the City did not comply with rule 193, we need not reach Anderson's other arguments.

Kent F. Brooks; Ackerman & Savage, L.L.P., Michael T. Savage, Dallas, TX, for Appellant.

Chappell, Hill & Lowrance, L.L.P.; David Chappell, Cynthia L. Hill, David Holder, Fort Worth, TX, for Appellee.

PANEL A: CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

### I. INTRODUCTION

In this appeal, we must determine whether the trial court properly dismissed this breach of contract case for want of subject matter jurisdiction. Because we determine that appellee Fort Worth Independent School District (FWISD) is not immune from suit for breach of contract, that appellant Service Employment Redevelopment has standing to bring a breach of contract claim against FWISD, and that appellant did not fail to exhaust administrative remedies, we reverse and remand.

### II. BACKGROUND FACTS

Appellant entered into a contract with FWISD under which appellant was to provide an alternative education program for FWISD students. The contract was initially effective for the 1995–96 school year and was dated December 12, 1995. Payment under the contract was to be made in accordance with a formula set forth in the contract. The contract required appellant to comply with applicable laws and with any rules of the Texas Education Agency or the FWISD Board of Education determined to be applicable. The contract further provided that "[i]f any provision . . . is declared invalid or unenforceable, such provision shall be deemed modified to the extent necessary and possible to render it valid and enforceable" and that "[a]ny un-

lawful provision shall be deemed stricken from the agreement and shall have no effect."

In December 1999, appellant sued FWISD alleging that the school district breached the contract by failing to compensate appellant in the amount required under education code section 37.008(g) for the 1995–96 school year.[1] *See* TEX. EDUC. CODE ANN. § 37.008(g) (Vernon Supp. 2004–05). Section 37.008(g) requires school districts to "allocate to a disciplinary alternative education program the same expenditure per student ... that would be allocated to the student's school if the student were attending the student's regularly assigned education program." *Id.* According to appellant, the parties intended to incorporate section 37.008(g) into the contract but did not include it as a result of either mutual mistake or fraud by FWISD; thus, the formula FWISD used to calculate the amount to pay appellant was less than the amount the parties intended under section 37.008(g). Because appellant alleged that the contract did not comply with section 37.008(g), it asked the trial court to strike the allegedly unlawful payment formula and modify the contract's payment provision to conform with section 37.008(g).

## III. DISCUSSION

FWISD filed a motion to dismiss for want of subject matter jurisdiction in the trial court alleging that appellant had no private right of action under education code section 37.008, had no standing to sue under education code section 37.008, and had not exhausted its administrative remedies. The trial court granted FWISD's motion to dismiss for want of subject matter jurisdiction without stating the specific grounds. On appeal, appellant challenges the trial court's dismissal of the case for lack of subject matter jurisdiction on all possible grounds. In five issues, appellant contends that the trial court reversibly erred in dismissing the case for lack of subject matter jurisdiction on the following grounds: FWISD is immune from suit, appellant has no private right of action under education code 37.008(g), appellant lacks standing, and appellant failed to exhaust administrative remedies.

▮ An appellant must attack all independent bases or grounds that fully support a complained-of ruling or judgment. *Britton v. Tex. Dep't of Criminal Justice,* 95 S.W.3d 676, 681 (Tex.App.-Houston [1st Dist.] 2002, no pet.); *see, e.g., Harris v. Gen. Motors Corp.,* 924 S.W.2d 187, 188 (Tex.App.-San Antonio 1996, writ denied). If an appellant does not, then we must affirm the ruling or judgment. *Britton,* 95 S.W.3d at 681. This rule is based on the premise that an appellate court normally cannot alter an erroneous judgment in favor of an appellant in a civil case who does not challenge that error on appeal. *See Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex.1993). If an independent ground fully supports the complained-of ruling or judgment, but the appellant assigns no error to that independent ground, then (1) we must accept the validity of that unchallenged independent ground, and thus (2) any error in the grounds challenged on appeal is harmless because the unchallenged independent ground fully supports the complained-of ruling or judgment. *See Walling,* 863 S.W.2d at 58–59; *Britton,* 95 S.W.3d at 681 (stating that an appellate court normally cannot alter an erroneous judgment in favor of an appellant in a civil case who does not challenge that error on appeal). The same reasoning applies to a plea to the jurisdiction based on multiple grounds that the trial court sustains with-

---

1. Appellant did not allege an actual numerical amount.

out specifying grounds. *Britton*, 95 S.W.3d at 682. On appeal, appellant has challenged all the possible grounds.

Because standing is implicit in the concept of subject matter jurisdiction and whether a trial court has subject matter jurisdiction is an issue determinative of the authority of a trial court to hear a case, we first address whether appellant had standing to bring a cause of action in this case.

## IV. STANDING AND PRIVATE RIGHT OF ACTION

■ In its third and fourth issues, appellant complains that the trial court erred by dismissing the case for lack of standing and by determining that appellant has no private right of action under education code 37.008(g). FWISD contests appellant's standing by treating appellant's claim as a damage claim stemming from a violation of section 37.008(g) rather than a breach of contract claim on the contract. But in a breach of contract action, a named party to the contract has standing to sue on that contract. *Copeland v. Alsobrook*, 3 S.W.3d 598, 608 (Tex.App.-San Antonio 1999, pet. denied). So we must now determine the nature of appellant's claim.

■ Standing is implicit in the concept of subject matter jurisdiction. *Waco ISD v. Gibson*, 22 S.W.3d 849, 850 (Tex. 2000); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993). Subject matter jurisdiction is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus.*, 852 S.W.2d at 443. Whether a plaintiff has standing is a question of law. *In re Shockley*, 123 S.W.3d 642, 647 (Tex.App.-El Paso 2003, no pet.). We construe appellant's pleadings in its favor and, if necessary, review the entire record to determine whether any evidence supports appellant's standing to sue FWISD. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446; *In re C.M.V.*, 136 S.W.3d 280, 284–85 (Tex.App.-San Antonio 2004, no pet.).

■ Appellant argues that it has standing because its claim against FWISD is a breach of contract claim; therefore appellant has a private right of action against FWISD. *See Renteria v. Trevino*, 79 S.W.3d 240, 242 (Tex.App.-Houston [14th Dist.] 2002, no pet.). FWISD contends that appellant's claim is actually a money damages claim for violation of education code section 37.008(g) requiring the school district to spend the same amount per student in a disciplinary alternative education program as it does for students attending regular education programs. *See* Tex. Educ.Code Ann. § 37.008(g). FWISD argues that section 37.008 does not expressly provide a private right of action and that appellant has no standing to bring a claim under section 37.008. *See id.* However, despite the absence of an express provision for a private right of action, a breach of a statutory duty normally gives rise to a private right of action on behalf of the injured group of persons for whose benefit the statute was enacted. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 549 (Tex.1985); *Securtec, Inc. v. County of Gregg*, 106 S.W.3d 803, 815 (Tex.App.-Texarkana 2003, pet. denied); *Lively v. Carpet Servs., Inc.*, 904 S.W.2d 868, 871 (Tex.App.-Houston [1st Dist.] 1995, writ denied). Accordingly, FWISD also argues that if the statute provides any right of action, it belongs to the alternative education students and their parents, not appellant.

■ Regardless of whether we agree with FWISD that appellant does not have a private right of action under section 37.008(g) of the education code, a review of appellant's pleadings makes clear that appellant did not bring a statutory claim under section 37.008(g) against FWISD.

Instead, appellant brought a common-law breach of contract claim based upon the contract as modified by section 37.008(g).

The provision of the contract entitled "scope" provides that the contract "shall be deemed to include all agreements ... and any additional provisions required by law, whether inserted or not." By contracting with FWISD, appellant agreed to provide certain students of the district with an alternative education program. Under the contract terms, appellant was required to comply with applicable laws and the rules of the Texas Education Agency or the FWISD Board of Education.

Appellant's pleadings allege that the parties intended that section 37.008(g) be incorporated into the contract and that due to mutual mistake the parties failed to incorporate it. In the alternative, appellant alleged in its pleadings that FWISD intentionally concealed the error and misrepresented to appellant that the contract included the correct terms. Appellant sought to reform the contract to incorporate section 37.008(g).

Additionally, appellant's pleadings relied upon the provision entitled "Modification" in arguing that the payment terms of the contract are "unlawful" under section 37.008(g). The contract states in part that "[i]f any provision of this agreement is declared invalid or unenforceable, such provision shall be deemed modified to the extent necessary and possible to render it valid and enforceable." Additionally, the contract provides that "[a]ny unlawful provision shall be deemed stricken from the agreement and shall have no effect."

In support of its claims, appellant points to the mandatory modification language of the contract provisions, mutual mistake, and fraud in arguing that the parties intended to incorporate education code section 37.008(g) into the contract. Appellant argues that FWISD breached the contract as modified or reformed by section 37.008(g). Appellant contends that section 37.008(g) requires adjustment to any contract that set a payment amount before the school district's fiscal year end that did not conform to the dictates of the section.

A review of appellant's pleadings reveals that all of appellant's claims are based upon the contract and basic contract law. *See Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). And as a party to the contract, appellant has standing to sue for breach, reformation, or modification of the contract to incorporate section 37.008(g). We sustain appellant's third and fourth issues.

## V. IMMUNITY FROM SUIT

In its first and second issues, appellant argues that the trial court erred by dismissing this case for lack of subject matter jurisdiction because the school district had not waived immunity from suit. Governmental immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225–26 (Tex.2004). The trial court must determine at its earliest opportunity whether it has the constitutional or statutory authority to decide the case before allowing the litigation to proceed. *Id.* at 226.

We review the trial court's ruling on a plea to the jurisdiction based on immunity from suit under a de novo standard of review. *Id.* at 225–26, 228; *Tex. Natural Res. Conserv. Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002). Whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is a question of law. *Miranda,* 133 S.W.3d at 226. Here, the parties concede

that the facts are undisputed. Thus, we determine as a matter of law whether the undisputed facts establish jurisdiction.

 When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id.; Tex. Ass'n of Bus.*, 852 S.W.2d at 446. We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Miranda*, 133 S.W.3d at 226; *Tex. Ass'n of Bus.*, 852 S.W.2d at 446.

 Appellant contends that Texas Education Code section 11.151(a) waives the school district's immunity from suit for breach of contract. Section 11.151(a) provides that "[t]he trustees of an independent school district constitute a body corporate and in the name of the district may acquire and hold real and personal property, *sue and be sued,* and receive bequests and donations or other moneys or funds coming legally into their hands." Tex. Educ.Code Ann. § 11.151(a) (Vernon Supp. 2004–05) (emphasis added). In support of its argument, appellant cites the Texas Supreme Court's holding in *Missouri Pacific Railroad Co. v. Brownsville Navigation District*, for its interpretation of the "sue and be sued" language of a 1925 navigation statute. 453 S.W.2d 812 (Tex. 1970). In *Missouri Pacific*, the court held that the legislature quite plainly waived a water navigation district's immunity from suit in a breach of contract action by providing that the district could "sue and be sued." *Mo. Pac.*, 453 S.W.2d at 813. Appellant contends that under that holding, the "sue and be sued" language of the education code clearly and unambiguously waives the school district's immunity from suit. FWISD argues, however, that the "sue and be sued" language merely refers to the capacity of a school district's trus-

tees and does not clearly and unambiguously waive immunity from suit.

 Governmental immunity protects governmental entities from lawsuits for damages absent legislative consent. *See Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex.1997). The doctrine of governmental immunity encompasses two distinct concepts: (1) immunity from suit (barring a lawsuit unless the legislature expressly gives its consent to suit); and (2) immunity from liability (even if the legislature has expressly given its consent to the suit). *See id.* "Immunity from liability is an affirmative defense, while immunity from suit deprives a court of subject matter jurisdiction." *Miranda*, 133 S.W.3d at 224.

 Although a governmental entity waives immunity from liability when it contracts with private citizens, its immunity from suit is not waived by its merely entering into a contract. *See Catalina Dev., Inc. v. County of El Paso*, 121 S.W.3d 704, 705 (Tex.2003); *Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex.2001). Express legislative consent is required to show that immunity from a breach of contract suit has been waived. *See Travis County v. Pelzel & Assocs., Inc.*, 77 S.W.3d 246, 248 (Tex.2002). Consent to suit must be expressed by clear and unambiguous language. Tex. Gov't Code Ann. § 311.034 (Vernon 2005); *Pelzel*, 77 S.W.3d at 248.

Over time, the doctrine of immunity has been divided into several distinct areas of law. For example, some statutes and cases deal with immunity as it relates exclusively to tort claims. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.021 (Vernon 1997) (the "Tort Claims Act"); *see also Shade v. City of Dallas*, 819 S.W.2d 578, 582 (Tex. App.-Dallas 1991, no writ) (holding government enjoys sovereign immunity for its negligent acts except to extent the Tort

Claims Act waives that immunity). The supreme court and the legislature have distinguished the requirements for waiver of immunity in a tort context from that in a contract context. *See, e.g.*, TEX. CIV. PRAC. & REM.CODE ANN. § 101.021; *see also Tarrant County Hosp. Dist. v. Henry*, 52 S.W.3d 434, 440–45, 448–49 (Tex.App.-Fort Worth 2001, no pet.) (analyzing waiver of immunity under Tort Claims Act and breach of contract claims separately and under different standards).

The present case involves the issue of waiver of immunity from suit in a breach of contract context. Accordingly, we are concerned with the cases defining immunity with respect to claims brought by private citizens against the State or other governmental entities for breach of contract.[2] *See Mo. Pac.*, 453 S.W.2d at 813; *see also Catalina Dev.*, 121 S.W.3d at 704–05; *Tex. A & M Univ.-Kingsville v. Lawson*, 87 S.W.3d 518, 521 (Tex.2002); *Pelzel*, 77 S.W.3d at 248; *IT–Davy*, 74 S.W.3d at 854; *Little–Tex*, 39 S.W.3d at 594; *Fed. Sign*, 951 S.W.2d at 405.

FWISD argues that the "sue and be sued" language in section 11.151(a) does not clearly and unambiguously waive immunity from suit because *Missouri Pacific* has been implicitly overruled by subsequent supreme court cases dealing with immunity from suit issues. Additionally, FWISD contends that the language is not a clear and unambiguous waiver in light of recent court of appeals decisions holding that such language does not waive immunity. Accordingly, we briefly review the holding in *Missouri Pacific* in light of subsequent immunity case law to determine whether the Texas Supreme Court has implicitly overruled its holding in *Missouri Pacific*.

### Missouri Pacific Railroad Co. v. Brownsville Navigation District and Progeny

In the 1970 *Missouri Pacific* case, the Texas Supreme Court held that language in the enabling statute for navigation districts providing that they can "sue and be sued" waived the navigation district's immunity from suit. *Mo. Pac.*, 453 S.W.2d at 813. The case arose when a brakeman for Missouri Pacific Railroad died after being knocked from a train ladder by a crane that had been left too close to the track. *Id.* at 812. In a cross-action for indemnity against the Brownsville Navigation District, Missouri Pacific claimed that the navigation district had entered into a contract with Missouri Pacific in which the district agreed not to allow construction or placement of any obstruction that would violate any law or regulation respecting clearance or safety margins in the vicinity of railroad tracks. *Id.* at 813. The navigation district filed a plea to the jurisdiction, which the trial court sustained on the grounds that the district was a subdivision of the State and that consent to its being sued had not been given. *Id.*

The issue was whether the legislature waived the navigation district's immunity from suit in a 1925 act, which provided that "[a]ll navigation districts established under this Act may, by and through the navigation and canal commissioners, *sue and be sued* in all courts of this State in the name of such navigation district, and all courts of this State shall take judicial notice of the establishment of all districts." *Id.* (quoting Act effective February 19, 1925, 39th Leg., R.S., ch. 5, § 46, 1925 Tex. Gen. Laws 7, 21, *repealed by* Act of March 29, 1971, 62nd Leg., R.S., ch. 58, § 1, 1971

---

2. Sovereign immunity refers to the State's immunity while governmental immunity refers to the immunity of other State-created units such as school districts. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n. 3 (Tex.2003).

Tex. Gen. Laws 110, 661) (emphasis added). Specifically, the court analyzed whether the phrase "sue and be sued" was a waiver of the navigation district's immunity from suit. *Mo. Pac.*, 453 S.W.2d at 813. The court concluded unequivocally: "In our opinion [the navigation district statute] is *quite plain* and gives general consent for [the] District to be sued in the courts of Texas in the same manner as other defendants." *Id.* (emphasis added).

The supreme court's holding in *Missouri Pacific* has not been explicitly overruled. Regardless, FWISD argues that the language refers only to the representative capacity of the school board trustees to "sue and be sued" in actions where immunity has been otherwise expressly waived. In arguing this position, FWISD cites to *Satterfield & Pontikes Construction, Inc. v. Irving Independent School District* in support of the proposition that the holding in *Missouri Pacific* is not controlling in the present case. 123 S.W.3d 63 (Tex.App.-Dallas 2003, pet. filed).

In *Satterfield*, the Dallas Court of Appeals held that the "sue and be sued" language of section 11.151(a) of the education code does not clearly and unambiguously waive a school district's immunity from suit. *Satterfield*, 123 S.W.3d at 68. In its analysis, the *Satterfield* court reasoned that the Texas Supreme Court had departed from the logic of *Missouri Pacific* in the three decades that followed. *Id.* at 67. The Dallas court relied upon the recent supreme court holding in *Travis County v. Pelzel & Assoc.* as support showing that the supreme court has departed from the logic of *Missouri Pacific*. *Id.; Pelzel*, 77 S.W.3d at 249. Thus, we will review *Pelzel* and other post *Missouri Pacific* cases to determine if FWISD's position is correct.

### Travis County v. Pelzel & Assoc.

In *Pelzel*, a construction company brought a breach of contract action against Travis County, seeking payment allegedly due under a contract for construction of an office building. *Pelzel*, 77 S.W.3d at 247–48. Prior to filing suit in the district court, the company presented its breach of contract claim to the county commissioner's court pursuant to Texas Local Government Code section 89.004. *Id.* at 247; *see also* Tex. Loc. Gov't Code Ann. § 89.004 (Vernon Supp.2004–05). The county refused to pay the claim. *Pelzel*, 77 S.W.3d at 247.

Section 89.004(a), entitled "Presentation of Claim," provides that "a person may not file suit on a claim against a county … unless the person has presented the claim to the commissioners court and the commissioners court neglects or refuses to pay all or part of the claim." Tex. Loc. Gov't Code Ann. § 89.004(a). The supreme court held that this statutory language did not clearly and unambiguously waive immunity from suit. *Pelzel*, 77 S.W.3d at 249. The court clarified that the section "states only that a party must present its claim to the commissioners court, which must neglect, refuse, or pay all of the claim before the party may file suit." *Id.*

*Satterfield* and FWISD both rely upon the *Pelzel* holding to support the proposition that *Missouri Pacific* is no longer good law. But FWISD and the *Satterfield* court ignore the fact that the *Pelzel* court cited *Missouri Pacific*, noting that "[o]riginally, the [presentment] statute contained 'sue and be sued' language, arguably *showing intent to waive sovereign immunity for suits* against counties.... Thus well over a hundred years ago, the Legislature deleted the only language arguably waiving sovereign immunity, suggesting that it intended to preserve counties' immunity from suit." *Id.* at 249–50 (emphasis added). The *Pelzel* court discussed *Missouri*

*Pacific* and distinguished its holding saying, "*Missouri Pacific* involved a different statute than the one in this case and that statute, unlike the current version of the [presentment] statute here, contained 'sue and be sued' language." *Id.* at 251. Although the *Pelzel* court did not expressly state that "sue and be sued" language is clear and unambiguous, we note that it was the absence of the "sue and be sued" language in the claim presentation statute that supported the majority's conclusion that it did not waive immunity from suit. *Id.*

### Federal Sign v. Texas Southern University

The first supreme court case to deal with the issue of waiver of immunity after *Missouri Pacific* was in 1997 in *Federal Sign v. Texas Southern University*, 951 S.W.2d at 408. That case dealt with a waiver of immunity from suit in a breach of contract case. The appellants in *Federal Sign* sued Texas Southern University for violations of the competitive bidding on contracts statute in the education code and for breach of contract. *Id.* at 404. The sign maker won in the trial court, but the appellate court reversed. *Tex. S. Univ. v. Fed. Sign*, 889 S.W.2d 509, 512 (Tex.App.-Houston [14th Dist.] 1994), *aff'd*, 951 S.W.2d 401 (Tex.1997). On appeal to the supreme court, the sign maker contended that it did not need legislative consent to sue the university because its claims included allegations that the university violated state law. *Fed. Sign*, 951 S.W.2d at 404. The supreme court noted, however, that allegations of the potential state law violations did not dispense with the necessity that the appellant obtain legislative consent to sue for breach of contract. *Id.* at 404–05. The court stated that the

State's consent to suit must be by either statute or legislative resolution, but that the consent must be by "clear and unambiguous language." *Id.* at 405. Throughout its opinion, the court cited *Missouri Pacific* and briefly discussed its holding. *Id.* at 405–08. The *Federal Sign* court stated that in *Missouri Pacific* it held that the statute providing that the navigation district could "sue and be sued" met the legislative permission requirement to waive of immunity from suit. *Id.* at 408.

The court in *Federal Sign* drew the following conclusions: (1) when the State contracts with private citizens, it waives only immunity from liability; (2) legislative consent is still required in order for a private citizen to sue the State on a breach of contract claim; and (3) the act of contracting alone does not waive the State's immunity from suit. *See id.* The appellant relied solely upon the state law allegations and the conduct of the university in arguing that sovereign immunity does not apply when the State enters into a contract with a private citizen.[3] *Id.* at 404–12. The court ultimately determined the university, a state institution, did not consent to suit merely by entering into the contract. *Id.*

A footnote in the majority opinion noted,

We hasten to observe that neither this case nor the ones on which it relies should be read too broadly. We do not attempt to decide this issue in any other circumstances other than the one before us today. There may be other circumstances where the State may waive its immunity by conduct other than simply executing a contract so that it is not always immune from suit when it contracts.

---

**3.** The court agreed that a private litigant does not need legislative permission to sue the

State for a state official's violations of state law. *Id.* at 404.

*Id.* at 408 n. 1. Accordingly, the holding in *Federal Sign* is apparently limited to the specific conduct and circumstances particular to that case and leaves the door open for the court to hold that a different type of government conduct could waive immunity from suit in the future. *See id.*

### General Services Commission v. Little–Tex Insulation Co.

Next, in 2001, the supreme court issued its opinion in *General Services Commission v. Little–Tex Insulation Co.* 39 S.W.3d at 591. In that case, a building contractor sued a state university to recover expenses not allegedly contemplated in their construction contract. *Id.* at 593–94. The district court granted the university's plea to the jurisdiction and the contractor appealed. In a separate action, a state contractor sued the General Services Commission, alleging breach of contract and violation of the takings clause in connection with the Commission's decision to terminate an asbestos abatement contract. The district court granted the Commission's plea to the jurisdiction and the contractor appealed. The court of appeals reversed and remanded in both cases. *DalMac Constr. Co. v. Tex. A & M Univ.*, 35 S.W.3d 654, 657 (Tex.App.-Austin 1999), *rev'd*, 39 S.W.3d at 591; *Little–Tex Insulation Co. v. Gen. Servs. Comm'n*, 997 S.W.2d 358, 365 (Tex.App.-Austin 1999), *rev'd*, 39 S.W.3d at 591. The supreme court then granted review in both cases. In its opinion, the supreme court cited *Missouri Pacific* only once in its discussion about the concept that governmental immunity encompasses the separate principles of immunity from liability and immunity from suit. *Little–Tex*, 39 S.W.3d at 594 (citing *Mo. Pac.*, 453 S.W.2d at 813).

In *Little–Tex*, the court stated that in *Federal Sign* it recently held that the State does not waive its immunity from suit for breach of contract simply by entering into a contract for goods and services. *Id.* at 593 (citing *Fed. Sign*, 951 S.W.2d at 408). The court noted that it had specifically reserved judgment on whether other circumstances may exist in which "the State may waive its immunity by conduct other than simply executing a contract." *Id.* (citing *Fed. Sign*, 951 S.W.2d at 408 n. 1). However, after the court issued its opinion in *Federal Sign*, the legislature established an administrative procedure for certain breach of contract claims against the State. *See* Tex. Gov't Code Ann. §§ 2260.001–.108 (Vernon 2000 & Supp.2004–05).[4]

Like it did in *Federal Sign*, the court again held that the State was entitled to immunity from suit. *Little–Tex*, 39 S.W.3d at 598. It concluded that the legislature intended the administrative procedure in government code sections 2260.001–.108 to be the exclusive method available for resolving certain breach of contract claims against the State. *Id.* at 596. Chapter 2260 of the Texas Government Code retained sovereign immunity from suit in certain breach of contract claims, but provided an administrative procedure to resolve those claims. *Id.; see also* Tex. Gov't Code Ann. §§ 2260.001–.108.

The plaintiffs in *Little–Tex* argued that chapter 2260 did not apply because the State's conduct in accepting the benefits of the contract waived immunity, so obtaining legislative consent was not necessary. *Little–Tex*, 39 S.W.3d at 596. The court

---

4. This statute is not applicable to a contract executed or awarded on or before August 30, 1999. Tex. Gov't Code Ann. § 2260.002(2) (Vernon Supp.2004–05). The contract be-

tween appellant and FWISD was executed on December 12, 1995 and applied to the 1995–96 school year.

rejected their argument, stating, "[W]e are not inclined in this case to impute knowledge to the Legislature of decisions establishing a waiver-by-conduct exception to immunity when the Legislature made its intent clear through the words it choose [sic] in Chapter 2260." *Id.* at 597. The court also stated that "there is but one route to the courthouse for breach-of-contract claims against the State, and that route is through the Legislature." *Id.* Ultimately, the court held that the State did not waive its immunity from suit on breach of contract claims by accepting the benefits of the contract. *Id.*

### Texas Natural Resource Conservation Commission v. IT–Davy

In 2002, the court issued its opinion in *IT–Davy*, 74 S.W.3d at 849. In that case, a contractor sued the Texas Natural Resource Conservation Commission for claims arising from an alleged breach of contract. *Id.* at 851. The parties did not dispute that the contractor had fully performed under the contract. *Id.* Rather, the dispute was over "equitable adjustments" provided for in the contract after the contractor claimed he had incurred additional expenses and lost profits stemming from materially different site conditions. *Id.* The contractor argued that the state agency had waived immunity from suit by *fully* accepting benefits under the contract. *Id.* at 856. The supreme court rejected the argument and stated, "[W]e reject IT–Davy's argument that we should fashion such a waiver-by-conduct exception in a breach-of-contract suit against the State." *Id.* at 857.

The opinion cites *Missouri Pacific* twice in support of the proposition that it is the legislature's sole province to waive or abrogate sovereign immunity. *Id.* at 853, 857 (citing *Mo. Pac.*, 453 S.W.2d at 813–14). Ultimately, the court held that the state agency was entitled to governmental immunity. *Id.* at 857.

### Texas A & M University–Kingsville v. Lawson

After *Pelzel*, see discussion *supra*, the supreme court decided *Lawson* in 2002. 87 S.W.3d at 518. The issue in *Lawson* was whether a government entity could claim immunity from suit for breach of a settlement agreement when the settlement agreement arose from a lawsuit from which the entity was not immune. *Id.* at 519–20.

The case involved the breach of a settlement agreement that an employee and the state university had entered into following the employee's suit over a violation of the Whistleblower Act. *Id.* at 518–19. In a plurality opinion, Justice Hecht cited *Missouri Pacific* twice. *Id.* at 520 & n. 15, 521 & n. 21. First, he cited it for the proposition that sovereign immunity encompasses the separate principles of immunity from liability and immunity from suit. *Id.* at 520 & n. 15. Second, he noted that the court in *Federal Sign* cited it as an example of a situation in which the legislature has waived immunity for breach of contract claims. *Id.* at 521 & n. 21. The court concluded that "when a governmental entity is exposed to suit because of a waiver of immunity, it cannot nullify that waiver by settling the claim with an agreement on which it cannot be sued." *Id.* at 521.

### Catalina Development Inc. v. County of El Paso

Next came *Catalina Development Inc.* in 2003. 121 S.W.3d at 704. In *Catalina*, the court again dealt with the waiver-by-conduct exception to the sovereign immunity rule. *Id.* The appellant in that case argued that El Paso County waived immunity from suit by advertising for bids to

sell some land, accepting appellant's bid, accepting and depositing the appellant's earnest money, and sending the appellant an earnest money contract to sign. *Id.* at 705. The county argued that its conduct constituted acts of contract formation, which did not waive immunity from suit. *Id.*

The appellant in *Catalina* distinguished his case from *Federal Sign* saying that he had fully performed under the contract. *Id.* at 706. The court noted that in *Federal Sign* the State was the buyer of commercial goods while here the county was the seller of government land. *Id.* The appellant did not wish to recover for goods already conveyed, instead he wished to enforce a sale of land that belonged to the people of the county. *Id.* Under these facts, the supreme court held that the county did not waive immunity from suit. *Id.*

### Courts of Appeals

Many courts of appeals have also dealt with the issue of waiver of governmental immunity to suit. Most have held that "sue and be sued" language clearly and unambiguously waives immunity from suit. A minority of others, however, have held differently. Accordingly we now briefly review holdings from this court and others.

This court has held that "sue and be sued" language waives immunity from suit in a breach of contract context.[5] *See Henry*, 52 S.W.3d at 448–49 (analyzing tort and contract claims separately and holding that "sue and be sued" language of the health and safety code waived hospital's immunity from suit for breach of contract); *Knowles v. City of Granbury*, 953 S.W.2d 19, 23 (Tex.App.-Fort Worth 1997, pet. denied) (holding that local government code and city charter providing that city "may sue, and be sued; [and] may contract and may be contracted with," waived city's immunity from suit); *Avmanco, Inc. v. City of Grand Prairie*, 835 S.W.2d 160, 165 (Tex. App.-Fort Worth 1992, writ dism'd as moot) (holding in a breach of contract case that government code waived city's immunity from suit by providing that "a municipality may plead and be impleaded in any court" and city charter waived immunity from suit by providing that the city "may sue and be sued"). *But cf. City of Fort Worth v. Pastusek Indus., Inc.*, 48 S.W.3d 366, 372 (Tex.App.-Fort Worth 2001, no pet.) (holding that appellee presented no evidence in pleadings or elsewhere in the record demonstrating legislative permission to sue city for breach of contract; accordingly, no waiver of immunity from suit was shown, and appellee could not maintain an action against city for breach of contract).

A majority of other appellate courts have also concluded that "sue and be sued" and similar language expresses the legislature's general consent to be sued and waives a governmental entity's immunity from suit based upon the binding precedent of *Missouri Pacific.*[6] Other appellate

---

5. We note that in *Texas Department of Mental Health v. Lee*, 38 S.W.3d 862 (Tex.App.-Fort Worth 2001, pet. denied), this court held that the mere incorporation of another statute into health and safety code section 321.001, which defines treatment facilities to include public facilities, does not, without more, manifest a clear legislative intent to the contrary to waive immunity with regard to governmental entities in suits under the Tort Claims Act. *Id.* at 871.

6. *See San Antonio ISD v. City of San Antonio*, No. 04-03-835-CV, 2004 WL 2450919, at *2-3 (Tex.App.-San Antonio Nov. 3, 2004, pet filed) (mem.op.) (holding that legislature clearly and unambiguously waived immunity from suit for independent school districts in section 11.151(a) of the Texas Education Code); *City of Lubbock v. Adams*, 149 S.W.3d 820, 824-25 (Tex.App.-Amarillo 2004, pet. filed) (holding that "sue and be sued" language in city charter waives immunity from

courts, however, have declined to follow *Missouri Pacific* and have held that "sue and be sued" and similar language does not waive a governmental entity's immunity from suit.[7] We note that the issue of

suit in accordance with *Missouri Pacific* and majority of courts of appeals' cases); *EPGT Tex. Pipeline, L.P. v. Harris County Flood Control Dist.*, No. 01–02–01056–CV, 2004 WL 1794715, at *7 (Tex.App.-Houston [1st Dist.] Aug. 12, 2004, pet. filed) (holding that "sue and be sued" language in water code waives flood control district's immunity from suit); *City of Texarkana v. City of New Boston*, 141 S.W.3d 778, 787 (Tex.App.-Texarkana 2004, pet. filed) (holding that the words "plead and be impleaded" in section 51.075 of the Texas Local Government Code are synonymous with "sue and be sued" and "waive governmental immunity from suit in light of the Texas Supreme Court's decision in *Missouri Pacific Railroad*"); *Metro. Transit Auth. v. MEB Eng'g, Inc.*, No. 01–04–00022–CV, 2004 WL 1584958, at *3 (Tex.App.-Houston [1st Dist.] July 15, 2004, pet. filed) (holding that transportation code section providing that transit authority may sue and be sued waives governmental immunity from suit under *Missouri Pacific*); *United Water Servs., Inc. v. City of Houston*, 137 S.W.3d 747, 755 (Tex.App.-Houston [1st Dist.] 2004, pet. filed) (holding that "sue and be sued" language clearly and unambiguously waived city's immunity from suit in a breach of contract suit); *City of Houston v. Clear Channel Outdoor, Inc.*, No. 14–03–00022–CV, 2004 WL 63561, at *1 (Tex. App.-Houston [14th Dist.] Jan. 15, 2004, pet. filed) (holding that language "may plead and be impleaded in any court" clearly and unambiguously waived city's immunity from suit); *Alamo Cmty. Coll. Dist. v. Browning Constr. Co.*, 131 S.W.3d 146, 154 (Tex.App.-San Antonio 2004, pet. filed) (holding "sue and be sued" language in education code clearly and unambiguously waived immunity from suit); *Goerlitz v. City of Midland*, 101 S.W.3d 573, 577 (Tex.App.-El Paso 2003, pet. filed) (holding immunity from suit waived because city charter provides the city may sue and be sued); *Welch v. Coca–Cola Enters.*, 36 S.W.3d 532, 538 (Tex.App.-Tyler 2000, pet. withdrawn) (holding immunity from suit waived because education code provides the school district trustees may sue and be sued); *Bates v. Tex. State Tech. Coll.*, 983 S.W.2d 821, 827 (Tex.App.-Waco 1998, pet. denied) (holding school's immunity from suit waived because education code provides college board may sue or be sued); *Alamo Comm. Coll. Dist. v.*

*Obayashi Corp.*, 980 S.W.2d 745, 747–48 (Tex. App.-San Antonio 1998, pet. denied) (holding school's immunity from suit waived because education code provides independent school district trustees can sue or be sued), *abrogated in part on other grounds, Little–Tex*, 39 S.W.3d at 598; *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 960 S.W.2d 343, 348 (Tex.App.-Corpus Christi 1997) (concluding that "sue and be sued" language in water code section 58.098 "provided clear and unambiguous consent for the Irrigation District to be sued"), *pet. denied*, 989 S.W.2d 360 (Tex. 1998); *Loyd v. ECO Res., Inc.*, 956 S.W.2d 110, 122–23 (Tex.App.-Houston [14th Dist.] 1997, no pet.) (holding water code provision stating that water district could sue and be sued waived immunity from suit); *Dillard v. Austin ISD*, 806 S.W.2d 589, 594 (Tex.App.-Austin 1991, writ denied) (op. on reh'g) (holding school's immunity from suit waived because education code provides school district trustees may sue and be sued); *Fazekas v. Univ. of Houston*, 565 S.W.2d 299, 302 (Tex. Civ.App.-Houston [1st Dist.] 1978, writ ref'd n.r.e.) (holding immunity from suit waived because education code provides University of Houston Board of Regents may sue and be sued), *superseded by* Act of May 15, 1985, 69th Leg., R.S., ch. 378, § 1, 1985 Tex. Gen. Laws 1466, 1466 (current version at TEX. EDUC.CODE ANN. § 111.33 (Vernon 2002)); *cf. City of San Antonio v. Butler*, 131 S.W.3d 170, 177 (Tex.App.-San Antonio 2004, pet. filed) (holding that "plead and be impleaded" language in local government code and "sue and be sued" language in city charter does not waive immunity from suit in tort cases, which are governed by the Tort Claims Act).

7. *See City of Roman Forest v. Stockman*, 141 S.W.3d 805, 813 (Tex.App.-Beaumont 2004, no pet.) (2–1 decision) (holding that, in light of the "recent emphasis by the Texas Supreme Court and the Texas Legislature on the necessity of 'clear and unambiguous' waiver," "sue and be sued" language in local government code does not waive immunity from suit); *City of Carrollton v. McMahon Contracting, L.P.*, 134 S.W.3d 925, 927–28 (Tex.App.-Dallas 2004, pet. filed) (concluding that "plead and be impleaded" language in local government code does not waive immunity

whether "sue and be sued" and similar language waives immunity from suit is currently before the Texas Supreme Court in twelve cases in which petitions for review have been filed or are pending: *San Antonio ISD* (San Antonio), *Adams* (Amarillo), *EPGT Tex. Pipeline* (Houston [1st Dist.]), *City of Texarkana* (Texarkana), *MEB Engineering* (Houston [1st Dist.]), *United Water Services* (Houston [1st Dist.]), *Clear Channel* (Houston [14th Dist.]), *City of Carrollton* (Dallas), *Browning Construction Co.* (San Antonio), *Satterfield* (Dallas), *Tooke* (Waco), and *Goerlitz* (El Paso).[8]

## Summary of Texas Supreme Court Immunity Law

Regardless of the minority of appellate courts that have held that "sue and be

from suit); *Satterfield,* 123 S.W.3d at 68 (holding "sue and be sued" language of the education code did not clearly and unambiguously waive school district's immunity from suit); *City of Dallas v. Reata Constr. Corp.,* 83 S.W.3d 392, 398 (Tex.App.-Dallas 2002) (holding that "sue and be sued" language refers to the city's capacity to sue when immunity has otherwise been waived), *rev'd on other grounds,* 47 Tex. Sup.Ct. J. 408, 2004 WL 726906, at *3 (Tex. April 2, 2004); *Jackson v. City of Galveston,* 837 S.W.2d 868, 871 (Tex.App.-Houston [14th Dist.] 1992, writ denied) (holding that "sue and be sued" language did not "impliedly" waive a city's immunity to suit), *declined to follow in Clear Channel Outdoor, Inc.,* 2004 WL 63561, at *4; *Townsend v. Mem'l Med. Ctr.,* 529 S.W.2d 264, 267 (Tex.Civ.App.-Corpus Christi 1975, writ ref'd n.r.e.) (holding that "sue and be sued" language did not "impliedly" waive a hospital district's immunity to suit); *Childs v. Greenville Hosp. Auth.,* 479 S.W.2d 399, 401 (Tex. Civ.App.-Texarkana 1972, writ ref'd n.r.e.) (holding that "sue and be sued" language did not "impliedly" waive a hospital district's immunity to suit, but relying on pre-*Missouri Pacific* cases to support its holding). *But see City of Mexia v. Tooke,* 115 S.W.3d 618, 621–23 (Tex.App.-Waco 2003, pet. granted) (holding that language indicating that the city can "plead and be impleaded" does not constitute clear and unambiguous waiver of immunity from suit, but recognizing that "sue and be sued" language provides the "requisite clarity to establish a waiver of immunity from suit").

**8.** *San Antonio ISD,* 2004 WL 2450919, at *2–3 (mem.op.) (holding that legislature clearly and unambiguously waived immunity from suit for independent school districts in section 11.151(a) of the Texas Education Code); *Adams,* 149 S.W.3d at 824–25 (holding that "sue and be sued" language in city charter waives immunity from suit in accordance with *Missouri Pacific* and majority of courts of appeals' cases); *EPGT Tex. Pipeline,* 2004 WL 1794715, at *7 (holding that "sue and be sued" language in water code waives flood control district's immunity from suit); *City of Texarkana,* 141 S.W.3d at 787 (holding that the words "plead and be impleaded" in section 51.075 of the Texas Local Government Code are synonymous with "sue and be sued" and "waive governmental immunity from suit in light of the Texas Supreme Court's decision in *Missouri Pacific Railroad*"); *MEB Eng'g, Inc.,* 2004 WL 1584958, at *3 (holding that transportation code section providing that transit authority may sue and be sued waives governmental immunity from suit under *Missouri Pacific*); *United Water Servs., Inc.,* 137 S.W.3d at 755 (holding that "sue and be sued" language clearly and unambiguously waived city's immunity from suit in a breach of contract suit); *Clear Channel Outdoor, Inc.,* 2004 WL 63561, at *1 (holding that language "may plead and be impleaded in any court" clearly and unambiguously waived city's immunity from suit); *City of Carrollton,* 134 S.W.3d at 927–28 (concluding that "plead and be impleaded" language in local government code does not waive immunity from suit); *Browning Constr. Co.,* 131 S.W.3d at 154 (holding "sue and be sued" language in education code clearly and unambiguously waived immunity from suit); *Satterfield,* 123 S.W.3d at 68 (holding "sue and be sued" language of the education code did not clearly and unambiguously waive school district's immunity from suit); *Tooke,* 115 S.W.3d at 621–23 (holding that language indicating that the city can "plead and be impleaded" does not constitute clear and unambiguous waiver of immunity from suit, but recognizing that "sue and be sued" language provides the "requisite clarity to establish a waiver of immunity from suit"); *Goerlitz,* 101 S.W.3d at 577 (holding immunity from suit waived because city charter provides the city may sue and be sued).

sued" language does not clearly waive immunity from suit, our review of the supreme court case law does not reveal that *Missouri Pacific* has been implicitly overruled. *Missouri Pacific* expressly held that "sue and be sued" language gives general consent to suit, and no Texas Supreme Court case since *Missouri Pacific* has addressed exactly the same issue. *See Mo. Pac.,* 453 S.W.2d at 813.

Our review of the case law from the Texas Supreme Court dealing with waiver of immunity from suit does not reveal that the court has departed from its holding in *Missouri Pacific* in the three decades following the holding. Nothing in these cases can be construed to overrule the holding of *Missouri Pacific.* Additionally, since *Missouri Pacific* was decided, eight supreme court cases have cited it, some on different grounds, without indicating any negative subsequent history regarding its holding that "sue and be sued" language waives immunity from suit in a breach of contract case. *See Univ. of Tex. S.W. Med. Ctr. at Dallas v. Loutzenhiser,* 140 S.W.3d 351, 358 n. 25 (Tex.2004); *Lawson,* 87 S.W.3d at 520 n. 15, 521 n. 21; *Pelzel,* 77 S.W.3d at 250–51; *IT–Davy,* 74 S.W.3d at 853; *Little–Tex,* 39 S.W.3d at 594; *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999); *Fed. Sign,* 951 S.W.2d at 405, 408; *Guaranty Petroleum Corp. v. Armstrong,* 609 S.W.2d 529, 530 (Tex. 1980).

Regardless, FWISD argues that the applicable standard for waiver of immunity from suit is by clear and unambiguous language and that this standard does not comport with the *Missouri Pacific* holding that "sue and be sued" language is *quite plain* and gives general consent to be sued in the courts of Texas. *See Satterfield,* 123 S.W.3d at 67. While we agree that waiver of immunity from suit must be by clear and unambiguous language, we do not agree that the *Missouri Pacific* holding is inconsistent with this standard. *See* Tex. Gov't Code Ann. § 311.034 (dictating that waiver of immunity must be "effected by clear and unambiguous language"). The use and meaning of the phrase "quite plain" is consistent with the meaning of "clear and unambiguous."

■ Stare decisis has its greatest force in statutory construction cases. *Grapevine Excavation, Inc. v. Maryland Lloyds,* 35 S.W.3d 1, 5 (Tex.2000). Adhering to precedent fosters efficiency, fairness, legitimacy, and predictability in the law. *Id.* As a lower court, we are bound by supreme court precedent. *Lubbock County v. Trammel's Lubbock Bail Bonds,* 80 S.W.3d 580, 585 (Tex.2002) (requiring intermediate appellate courts to follow supreme court precedent and leave to the supreme court the matter of abrogating or modifying its own precedent); *see also Law Offices of Windle Turley, P.C. v. French,* 140 S.W.3d 407, 413 (Tex.App.-Fort Worth 2004, no pet.) (op. on reh'g) (recognizing that court of appeals is bound by supreme court precedent). Furthermore, precedent from this court dictates the same result. *See* cases cited *supra* p. 157; *see also Mobil Oil Corp. v. Shores,* 128 S.W.3d 718, 722–23 (Tex.App.-Fort Worth 2004, no pet.) (op. on reh'g) (basing decision in that case in part on binding precedent of this court).

■ "It is a firmly established statutory construction rule that once appellate courts construe a statute and the Legislature re-enacts or codifies that statute without substantial change, we presume that the Legislature has adopted the judicial interpretation." *Grapevine,* 35 S.W.3d at 5. Since the supreme court's decision in *Missouri Pacific,* the legislature has codified the statute construed in that case with no change to the "sue and be sued" language. *See* Act of March 29, 1971, 62nd Leg., R.S.,

ch. 58, §§ 1, 2, 1971 Tex. Gen. Laws 110, 611, 658, 661 (current version at Tex. WATER CODE ANN. § 62.078 (Vernon 2004)). Additionally, section 11.151 of the education code is a re-enactment of former section 23.26; the legislature re-enacted that section without any change in the "sue and be sued" language despite a prior court of appeals case holding that the "sue and be sued" language waived a school district's immunity from suit. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, 1995 Tex. Gen. Laws 2207, 2227 (amended 2003) (current version at Tex. Educ.Code Ann. § 11.151); Act of June 2, 1969, 61st Leg., R.S., ch. 889, § 1, 1969 Tex. Gen. Laws 2735, 2954, *repealed by* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 58, 1995 Tex. Gen. Laws 2207, 2498; *Dillard,* 806 S.W.2d at 594; *see also Fazekas,* 565 S.W.2d at 302 (holding immunity from suit waived under different section of education code, which also contains "sue and be sued" language).

Accordingly, we join the majority of the courts of appeals and hold that *Missouri Pacific* has not been overruled by implication. *See Lubbock County,* 80 S.W.3d at 585. Although we recognize that other statutes may use more explicit language to waive immunity,[9] that the more recent trend is for the legislature to waive immunity using more explicit statutory language; and that review is pending in the supreme court on many cases from our sister courts on this very issue, we are compelled and bound by Texas Supreme Court precedent and the principles of stare

decisis and, accordingly, must hold that the "sue and be sued" language of the Texas Education Code waives the school district's immunity from suit in a breach of contract case. *See id.* We, as an intermediate appellate court, are reluctant to depart from the black letter of the law. We would rather err on the side of following controlling supreme court precedent— leaving the enunciation of any new or evolving standard to that court—than err by encroaching on the legislative or supreme court lawmaking functions. We sustain appellant's first and second issues.

## VI. EXHAUSTION OF ADMINISTRATIVE REMEDIES

In its fifth issue, appellant complains that the trial court erred by dismissing the case for failure to exhaust its administrative remedies as required under the education code. Texas law requires that an aggrieved party must first exhaust all remedies provided under the statutory administrative scheme if the subject matter (1) concerns the administration of school laws, and (2) involves questions of fact. *Mission ISD v. Diserens,* 144 Tex. 107, 188 S.W.2d 568, 570 (1945); *Jones v. Dallas ISD,* 872 S.W.2d 294, 296 (Tex. App.-Dallas 1994, writ denied). An aggrieved party is not required to exhaust administrative remedies when only a question of law exists. *Harlandale ISD v. Rodriguez,* 121 S.W.3d 88, 91–92 (Tex. App.-San Antonio 2003, no pet.).

---

9. Clear and unambiguous waivers of consent to suit include, for example, the Tort Claims Act, which provides that "[s]overeign immunity to suit is waived and abolished to the extent of liability created by this chapter." Tex. Civ. Prac. & Rem.Code Ann. § 101.025(a). The Private Real Property Rights Preservation Act states that "[s]overeign immunity to suit and liability is waived and abolished to the extent of liability created by this chapter."

Tex. Gov't Code Ann. § 2007.004(a) (Vernon 2000). The Whistleblower Act allows public employees who allege a violation of the act to "sue the employing state or local governmental entity for the relief," and dictates that "[s]overeign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter." *Id.* § 554.0035 (Vernon 2004).

Former Texas Education Code section 11.13(a) required that persons having a dispute arising under the school laws of Texas, or any person aggrieved by actions or decisions of any board of trustees or board of education, may appeal in writing to the commissioner of education. Act of June 2, 1969, 61st Leg., R.S., ch. 889, § 1, 1969 Tex. Gen. Laws 2735, 2757, *repealed by* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 58, 1995 Tex. Gen. Laws 2207, 2498 (current version at TEX. EDUC.CODE ANN. § 7.057 (Vernon Supp.2004–05)).[10] Courts have interpreted this statute as imposing a mandatory duty to exhaust administrative remedies before bringing an action in district court. *Janik v. Lamar Consol. ISD,* 961 S.W.2d 322, 323 (Tex.App.-Houston [1st Dist.] 1997, pet. denied).

Here, FWISD argues that because appellant's claims rely upon the interpretation and application of education code section 37.008(g), the case involves the administration of school laws. FWISD also contends that former education code section 11.13(a) dictates that appellant must exhaust administrative remedies before bringing suit. *Jones,* 872 S.W.2d at 296. When looking at whether appellant must exhaust administrative remedies as a prerequisite to bringing this case in the trial court, we must analyze this issue in light of appellant's pleadings.

Appellant argues that it was not required to exhaust administrative remedies because it is a third-party vendor suing for a debt on a breach of contract claim. *See Spring Branch ISD v. Metalab Equip. Co.,* 381 S.W.2d 48, 48 (Tex.1964). In a short per curiam opinion, the court in *Spring Branch* held that a suit by a corporation against an independent school district for

breach of contract to buy laboratory equipment did not embrace a complaint relating to administration of school laws, and an action could be maintained in the trial court without first exhausting administrative remedies. *Id.*

Similarly, the Texarkana court of appeals has also held that a breach of contract action against a public school district by a vendor that successfully bid on a contract to furnish vehicles to the district did not relate to the administration of school laws, and thus was not subject to the exhaustion of remedies requirement. *New Caney ISD v. Burnham AutoCountry, Inc.,* 30 S.W.3d 534, 537 (Tex.App.-Texarkana 2000, pet. denied). The claims in *New Caney* related to the terms of contract and not the statutory procedures for bidding on school contracts. *Id.* The Texarkana court cited *Spring Branch* as authority for holding that an action by an outside vendor against a school district for debt and breach of contract does not relate to the administration of school laws. *Id.*

Regardless, FWISD contends that the interpretation and application of section 37.008(g) involves the administration of school laws and that issues of fact regarding the proper amount of funding for a specific education program under school law are at issue here. FWISD therefore contends that appellant must exhaust administrative remedies before bringing suit. *See Jones,* 872 S.W.2d at 296.

We disagree that appellant's claims can be categorized as "arising under the school laws of Texas" and automatically trigger the administrative remedies requirement of former section 11.13(a). As we previously concluded, appellant's claims center

---

10. The repealing act contained a savings provision stating that any appeal of an action taken or a decision made by a board of trustees before January 1, 1996 is governed by section 11.13 of the education code as it existed before it was repealed. Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 60, 1995 Tex. Gen. Laws 2207, 2499.

around the contract and general contract law. The resolution of the dispute centering on section 37.008(g) of the education code depends upon whether the contract can be interpreted to include section 37.008(g). To determine if it can, the trial court must necessarily decide whether the law can be interpreted to mean what appellant says it does and, if it can, whether it can be incorporated into the contract.

This is a contract case that depends upon the interpretation of that contract and the meaning of a statute. And, according to appellant's pleadings, this case was not brought under the school laws of Texas, but under the common law of contract. Although appellant seeks to incorporate section 37.008(g) into the contract, we conclude appellant's contract claims do not relate to the administration of school laws. *See Spring Branch ISD,* 381 S.W.2d at 48; *New Caney ISD,* 30 S.W.3d at 537.

Additionally, it is well-settled that, generally, a party need not exhaust administrative remedies when the issue before the court is a pure question of law. *See Grounds v. Tolar ISD,* 707 S.W.2d 889, 892 (Tex.1986); *City of Austin v. Pendergrass,* 18 S.W.3d 261, 264–65 (Tex.App.-Austin 2000, no pet.). Statutory construction is a matter of law, which we review de novo. *In re Canales,* 52 S.W.3d 698, 701 (Tex. 2001); *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989).

Appellant's claims ultimately rely upon the interpretation of the language in section 37.008(g) because appellant interprets the language, "school district shall allocate to a disciplinary alternative education program," to mean that the school district is required to pay appellant an amount equal to that allocated to students in regularly assigned education programs. Whether "allocate" and "program" can be interpreted to mean "pay" and "appellant," respectively, is a matter of statutory interpreta-

tion. As such, it is a matter of law for the trial court.

We hold that appellant's contract claims do not arise under the school laws of Texas, but under general contract law. Appellant's claims also depend upon statutory interpretation of section 37.008(g). Accordingly, we conclude appellant was not required to exhaust administrative remedies before bringing its case in the trial court. Appellant's fifth point is sustained.

## VII. CONCLUSION

Having sustained all of appellant's points, we reverse the judgment of the trial court and remand the case for proceedings consistent with this opinion.

CAYCE, C.J., dissents without opinion.