COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

                                                                                                        

                                        NO.
2-04-149-CV

 

 

DESOTO
WILDWOOD                                                           APPELLANT

DEVELOPMENT, INC.                                                       AND
APPELLEE

 

                                                   V.

 

THE CITY OF
LEWISVILLE,                                                      APPELLEE

TEXAS                                                                       AND
APPELLANT

 

                                              ------------

 

            FROM
THE 158TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                OPINION
ON REHEARING

 

                                              ------------

After reviewing Appellant=s motion for rehearing, we deny the motion.  We withdraw our opinion and judgment of
October 27, 2005 and substitute the following.

I.  Introduction

In four issues, DeSoto
Wildwood Development, Inc. (ADeSoto@) appeals
the dismissal of its lawsuit against the City of Lewisville, Texas (Athe City@) through
the granting of the City=s amended
plea to the jurisdiction.  We affirm in
part and reverse and remand in part.








 

II.  Factual and Procedural Background








In October of 1993, DeSoto
owned, and sought to develop, a tract of unimproved real property of
approximately thirty-five acres in size, located within the territorial
jurisdiction of the City of Lewisville, which is a home-rule municipality.  The development, to be called Creek View
Village Addition, phases II, III, IV, abutted Garden Ridge Boulevard.  Upon application to the City for approval of
the development, DeSoto was informed that an expansion of the existing Garden
Ridge Boulevard would be necessitated, and as a condition for approval, the
City imposed fees on DeSoto to pay for the costs of expanding and constructing
the roadway facilities.  The subdivision
regulations for the City required DeSoto to dedicate the expanding roadway area
to the City and pay for all public improvements, including pavement, drainage,
sidewalks, and traffic control equipment for an expanded Garden Ridge Boulevard
adjacent to the new addition.[1]  The total of the fees paid by DeSoto to the
City amounted to $132,988, which were escrowed by DeSoto for the construction
of the roadway and improvements.  The
agreement between the City and DeSoto, besides providing for the escrow of the
fees, included language that A[t]he exact time for construction of said Improvements shall be in
[the] sole discretion of [the] >City.=@  The agreement also allowed
DeSoto to construct the improvements in lieu of the City, at DeSoto=s option, and after the construction and approval of which, the
escrowed monies would be returned by the City to DeSoto.  As Creek View Village Addition developed,
lots were sold to resident purchasers but, according to DeSoto, less than 100%
of the land in the subdivision was sold or transferred to these third parties
because the rights-of-way for streets, including the Garden Ridge Boulevard
easement, was dedicated but title was not transferred. 








In April and October of 2001,
DeSoto made written demands on the City for refund of the escrow fees because
the City had failed, in eight years, to construct the capital improvements and
roadway facilities contemplated by their agreement.  These requests were rebuffed by the City
through its city attorney.[2]  The City was also asked by DeSoto to advise
DeSoto if any specific form requests or further information was necessary to
obtain the requested funds.  Neither
forms nor requests for information nor refunds were forthcoming, and litigation
ensued.  

In its second amended
petition, DeSoto alleged causes of action against the City for (1) the refund
of the Aimpact fees@ pursuant to
chapter 395 of the local government code, (2) breach of the DeSoto-Lewisville
agreement regarding the payment of the fees, (3) state and federal takings
claims, and (4) the return of the fees because they were excessive.  On April 1, 2004, a hearing was held on the
City=s amended plea to the jurisdiction, which the trial court
granted.  Findings of fact and
conclusions of law were also made.  This
appeal followed as to all causes of action except the federal takings claim.

III.  Plea to the Jurisdiction








A plea to the jurisdiction
challenges the trial court=s authority to determine the subject matter of the action without
defeating the merits of the case.  Tex.
Dep=t of Transp.
v. Jones, 8 S.W.3d 636, 638 (Tex. 1999); Archibeque
v. North Texas State Hospital-Wichita, 115 S.W.3d 154, 157 (Tex. App.CFort Worth 2003, no pet.). 
Whether the trial court had subject matter jurisdiction is a question of
law that we review de novo.  Univ.
of North Texas v. Harvey, 124 S.W.3d 216, 220 (Tex. App.CFort Worth 2003, no pet.).  The
plaintiff has the burden to plead facts that affirmatively establish the trial
court=s subject matter jurisdiction.  Tex.
Ass=n of Bus. v.
Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex.
1993).  

Although the claims may form
the context in which a plea to the jurisdiction is raised, the plea should be
decided without delving into the merits of the case.  Bland ISD v. Blue, 34 S.W.3d 547, 554
(Tex. 2000).  Accordingly, in determining
whether jurisdiction exists, we look to the allegations in the pleadings,
accept them as true, and construe them in favor of the pleader.  Tex. Ass=n of Bus., 852 S.W.2d at 446.  We may also consider evidence presented to
the trial court relevant to jurisdiction when it is necessary to resolve the
jurisdictional dispute.  Blue, 34
S.W.3d at 555.  If the pleadings
affirmatively negate the existence of jurisdiction, then a plea to the
jurisdiction may be granted without allowing the plaintiff an opportunity to
amend.  County of Cameron v. Brown,
80 S.W.3d 549, 555 (Tex. 2002).

The City included in its plea
to the jurisdiction DeSoto=s responses to disclosure and admissions and part of the City of
Lewisville General Development Ordinance. 
DeSoto included an affidavit, multiple agreements, and certain
correspondence in support of its response to the City=s plea to the jurisdiction. 
Applying a de novo standard of review, we will review DeSoto=s pleadings and, when necessary, the relevant jurisdictional evidence
to resolve the jurisdictional dispute.  See
id.








 

IV.  Chapter
395 of the Local Government Code

In its first issue, DeSoto
argues that the trial court erred by determining that it did not have
jurisdiction to hear DeSoto=s claims for a refund of Aimpact fees@ under
chapter 395 of the local government code. 
DeSoto asserts that it is entitled to a refund of the paid, but unused
impact fees pursuant to section 395.025 of the local government code.  The City responds that the trial court lacked
jurisdiction because DeSoto did not have standing to demand return or refund of
the fees because they were not statutory impact fees.  Thus, the first question to be answered in
this appeal is whether the fees paid by DeSoto were statutory Aimpact fees.@ 

A.  Impact Fees

 The trial court, in its finding of fact number
13, concluded that the escrow funds in question did not constitute an Aimpact fee@ as defined
in the local government code.  We hold
that this is actually a conclusion of law, which is reviewed de novo as
a legal question.  Smith v. Smith,
22 S.W.3d 140, 149 (Tex. App.CHouston [14th Dist.] 2000, no pet.).








Chapter 395 of the local
government code, titled AFinancing
Capital Improvements Required By New Development In Municipalities, Counties,
And Certain Other Local Governments,@ provides the methods and means by which an impact fee is to be
lawfully imposed, if at all.  An impact
fee is defined as Aa charge or
assessment imposed by a political subdivision against new development in order
to generate revenue for funding or recouping the costs of capital improvements
or facility expansions necessitated by and attributable to the new development.@  Tex. Loc. Gov=t Code Ann. ' 395.001(4) (Vernon Supp. 2004-05). 
The definition continues, A[t]he term includes amortized charges, lump-sum charges, capital
recovery fees, contributions in aid of construction, and any other fee that
functions as described by this definition.@[3]  Id.  An impact fee does not, however, include Adedication of rights-of-way or easements or construction or dedication
of on-site or off-site water distribution, wastewater collection or drainage
facilities, or streets, side-walks, or curbs if the dedication or construction
is required by a valid ordinance and is necessitated by and attributable to the
new development.@  Id. ' 395.001(4)(B).  An ordinance
assessing an impact fee is invalid unless it complies with the procedures
outlined in chapter 395, including notice of a hearing on land use assumptions
and standards for determining the appropriate impact fee amount.  Id. '' 395.011, 395.041.








The City contends that
exception (B) of section 395.001(4) is applicable to the fees paid by DeSoto
because the fees were required by a valid ordinance and the original bill=s author indicated that the bill would not change the way cities
required developers to pay for streets.[4]  Further, the City points to Attorney General
Opinion 97-048 (1997), wherein the opinion holds that an escrow fee required by
the City of Sherman, Texas for Acurb and gutter, and one-half of the cost of constructing a street@ was not an impact fee because of the stated intent of the bill=s author.








Conversely, it is DeSoto=s position that exception (B) is inapplicable because (1) by its plain
wording, it only applies to streets, sidewalks, curbs, etc. which have been
dedicated or constructed and not to fees assessed to construct those
improvements and (2) by a plain reading of the definition of Aimpact fee.@  In support of this position, it points out that
proposed amendment H.B.1786, 71st Leg., R.S. (1989) was not enacted, which
would have added language to exception (B) such that it would have read in
pertinent part, @(B)
dedication of rights-of-way or easements, or payment of a fee in lieu of
such dedication. . . .@  Because of the plain wording
of both the definition of Aimpact fee@ and
exception (B) and because this amendment was rejected, DeSoto concludes that
fees are not included in the meaning of exception (B).  However, this court observes that an argument
could also be made that the amendment was rejected because it would be a
redundancy, that is, the meaning is already there.  DeSoto further points to exception (B)=s companion, exception (A), which reads: A(A) dedication of land for public parks or payment in lieu of the
dedication to serve park needs[.]@  Tex. Loc. Gov=t Code Ann. ' 395.001(4)(A) (emphasis
added).  The highlighted language is
noticeably absent from exception (B).  








We are persuaded that DeSoto=s interpretation is correct. 
The plain reading of the statutory definition along with the attempted,
but rejected, amendment, the clear wording of the companion exception, and the
fact that the Attorney General=s opinion considered only the colloquy cited as authority for its
conclusion,[5]
lead us to conclude that the fees imposed in this case were not subject to
exception (B) and were Aimpact fees@ as defined by section 395.001(4) of the local government code.  

C. Ownership

The City argues that even if
it is determined that the fees were impact fees the trial court lacked
jurisdiction because DeSoto lacked standing to demand return of the fees
because they were not a party entitled to return of the fees.

In order to bring a lawsuit,
a plaintiff must have standing.  Coastal
Liquids Transp., L.P. v. Harris County Appraisal Dist., 46 S.W.3d 880, 884
(Tex. 2001).  Standing requires that
there be a real controversy between the parties that will be actually
determined by the judicial declaration sought. 
Nootsie Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d
659, 662 (Tex. 1996).  Standing is a
component of subject matter jurisdiction (which is essential to the authority
of a court to decide a case), and we consider it under the same standard by
which we review subject matter jurisdiction generally.  Tex. Ass=n of Bus., 852 S.W.2d at 445-46.  








The underlying basis for
DeSoto=s demand for the return of its impact fees is contained in section
395.025(a), which reads:  AOn the request of the owner of the property on which an impact fee
has been paid, the political subdivision shall refund the impact fee . . .
.@  Tex.
Loc. Gov=t Code Ann. ' 395.025(a) (emphasis added). 
It can be argued that this language is ambiguous as to whether the
owner referred to is the owner that paid the fee or the owner at the time the
refund is requested or paid.  We resolve
this patent ambiguity by examining the language of sections 395.025(e).  Subsection (e) reads:  AAll refunds shall be made to the record owner of the property at the
time the refund is paid.@  Id. ' 395.025(e).  Considering that
our determination of legislative intent should be based on the whole statute
and not just an isolated portion thereof, Jones v. Fowler, 969 S.W.2d
429, 432 (Tex. 1998), we hold that DeSoto must be a present property owner to
request and receive a refund and to have standing to pursue the claim.[6]








In the instant case, according
to Gary Baker, President of DeSoto at the time DeSoto answered the City=s first set of interrogatories, Desoto did not own Aany real property in the Creekview Village Addition, Phases II, III,
and IV.@  Also, DeSoto admitted in its
response to the City=s request
for admission that it currently owned no real property in this area.  Hence, it appears DeSoto was not a property
owner at that time able to request and receive a refund.  Moreover, there is no evidence that DeSoto
later reacquired property there.  A
matter admitted in such a fashion is conclusively established[7]
and contrary evidence is inadmissable.  Marshall
v. Vise, 767 S.W.2d 699, 700 (Tex. 1989). 
Nonetheless, a party relying on the judicial admissions of another must
protect the record by timely objecting to controverting evidence.  Id. 
The affidavit of Gary Baker attached to DeSoto=s response to the City=s amended plea to the jurisdiction states,  

Developer
sold all of the lots that had been subdivided to the third-party resident
purchasers.  However, less than one
hundred percent (100%) of the land in the subdivision was sold or transferred
to third parties.  Although Developer
dedicated land for streets, including the Garden Ridge Boulevard Easement,
Developer never transferred title of that property.

 

This statement was objected to by the City but
the objection was overruled by the court. 
We hold that the objection was valid and should have been sustained; the
admission was conclusively established.

Further, the City argues that
because the findings of fact are unchallenged through a factual or legal
sufficiency point, they are binding on the parties and all this court.  We agree. 
Hotel Partners v. KPMG Marwick, 847 S.W.2d 630, 632 (Tex. App.CDallas 1993, pet. denied).   The
trial court, in its finding of fact number 17, found,








[t]he plaintiff sold all of
its ownership interest in the property of the subdivision when the subdivision
was developed . . . in the Creekview Village subdivision.  As a matter of law, the abutting property
owners of Garden Ridge Boulevard own fee simple title to the center of the
street.  Because the plaintiff is not the
current property owner, the plaintiff does not have standing and is not
entitled to refund of any impact fee.

The statement that A[t]he plaintiff sold all of its ownership interest in the property of
the subdivision when the subdivision was developed@ is a finding of fact, and is unchallenged.  DeSoto asserts that finding of fact number 17
is a conclusion of law, which is reviewed de novo.  Austin Hardwoods, Inc. v. Vanden Berghe,
917 S.W.2d 320, 322 (Tex. App.CEl Paso 1995, writ denied). 
With respect to the finding that DeSoto sold all of its interest, we
disagree with DeSoto=s contention
and hold that the fact finding is binding on DeSoto and this court.  Accordingly, considering DeSoto=s pleadings and the relevant jurisdictional evidence, we hold that
DeSoto did not have standing to seek return of the impact fees because DeSoto
was not an Aowner of the
property on which an impact fee has been paid.@  See Tex. Loc. Gov=t Code Ann. ' 395.025(f).  We overrule DeSoto=s first issue.

                                       V. Excessive Fees








In its second issue, Desoto
argues that the trial court erred by determining that it did not have
jurisdiction to consider DeSoto=s claims for the return of its assessed impact fees.  Specifically, DeSoto maintains that the City
failed to comply with the procedural requirements for adopting the fees found
in sections 395.041 to 395.058 of the local government code.[8]  By not enacting the required administrative
procedures prior to assessing the impact fees, DeSoto argues that the maximum
amount of impact fees the City was authorized to assess was $0, and, therefore,
the entire fee assessment was subject to return as an excessive fee.  Consequently, DeSoto asserts that section
395.074 of the local government code provides a statutory remedy for the
improperly assessed impact fees, thus conferring standing upon it and entitling
it to recover a penalty Atwice the
amount of the actual [f]ees DeSoto paid plus attorney=s fees and court costs.@  Because section 395.074
expressly provides to the contrary, we disagree.

Section 395.074 permits the
recovery of excessive fees in certain, limited situations, and a party who does
not satisfy the requirements of this section lacks standing to recover an
excessive fee.  See Tex. Loc. Gov=t Code Ann. ' 395.074.  Titled, APrior Impact Fees Replaced by Fees Under This Chapter,@ section 395.074 states in its entirety,








An
impact fee that is in place on June 20, 1987, must be replaced by an impact fee
made under this chapter on or before June 20, 1990.  However, any political subdivision having
an impact fee that has not been replaced under this chapter on or before June
20, 1988, is liable to any party who, after June 20, 1988, pays an impact fee
that exceeds the maximum permitted under Subchapter B by more than 10 percent for
an amount equal to two times the difference between the maximum impact fee
allowed and the actual impact fee imposed, plus reasonable attorney=s
fees and court costs.

 








Id. (emphasis
added).  As stated above, DeSoto argues
that the maximum impact fee the City was authorized to assess was $0 because
the City did not enact the required administrative procedures prior to
assessing the impact fee.  As such, DeSoto
contends that the impact fee assessed by the City exceeded the maximum amount
by $132,988 (the amount assessed), thus allowing DeSoto to recover twice the
amount assessed.  Section 395.074,
however, provides otherwise.  Section
395.074 penalizes a political subdivision that fails to replace its impact fee
with a fee under chapter 395 not by establishing a maximum impact fee amount of
$0, but by providing liability Afor an amount equal to two times the difference between the maximum
impact fee allowed and the actual impact fee imposedA when the impact fee assessed Aexceeds the maximum permitted under Subchapter B by more than 10
percent.@  Id.  Thus, the first step in determining when a
political subdivision is liable for assessing an excessive fee under section
395.074 is to compare the impact fee actually assessed and the impact fee as it
should have been assessed pursuant to Subchapter B.  If the impact fee assessed exceeds the
maximum fee permitted under Subchapter B by more than 10%, then, and only then,
is the political subdivision liable for two times the difference between the
maximum impact fee allowed under Subchapter B and the actual fee assessed.  

Here, DeSoto merely argued
that the maximum impact fee amount the City was authorized to assess was
$0.  DeSoto has not shown what the
maximum impact fee Subchapter B allows to be assessed is, and, consequently, it
has not, as the statute requires, shown that the impact fee amount it paid is
more than 10% of the maximum amount Subchapter B permits to be assessed.  Thus, accepting DeSoto=s allegations in its amended petition as true, construing them in
DeSoto=s favor, and considering the jurisdictional evidence presented to the
trial court, we hold that DeSoto has not shown that its claim falls under the
scope of section 395.074.  Accordingly,
DeSoto has not established standing to challenge the alleged excessive fees
that section 395.074 apparently aims to eradicate.  We hold that the trial court did not err by
determining that it did not have jurisdiction to consider DeSoto=s claims for the return of its assessed impact fees, and we overrule
DeSoto=s second issue.

 

 








VI.  Breach of Contract

In its third issue, DeSoto
asserts error on the part of the trial court in determining that it did not
have jurisdiction to hear DeSoto=s breach of contract claims. 
DeSoto argues that the City has failed to live up to its agreements
regarding the use of the impact fees. 
The City argues that it is immune from suit from such a contract claim,
as well as from DeSoto=s other
causes of action, and that DeSoto does not have standing to pursue the claim
because it has failed to exhaust its administrative remedies.

A.  Standard of ReviewCSovereign Immunity

Sovereign immunity defeats a
court=s subject matter jurisdiction, and governmental entities are immune from
suit unless the State consents.  Dallas
Area Rapid Transit v. Whitley, 104 S.W.3d 540, 542 (Tex. 2003).  DeSoto, as plaintiff, had the burden to
invoke the court=s
jurisdiction.  AIn a suit against a governmental unit, the plaintiff must
affirmatively demonstrate the court=s jurisdiction by alleging a valid waiver of immunity.@  Id.  This meant that DeSoto bore the burden to
allege facts affirmatively showing that the trial court had jurisdiction.  Tex. Ass=n of Business, 852 S.W.2d at 446.








If its terms are applicable,
chapter 395 of the local government code may constitute a waiver of sovereign
immunity and vest the trial court with subject matter jurisdiction.  Thus, to maintain a cause of action against a
municipality and invoke the trial court=s jurisdiction, DeSoto must pursue its cause of action under the local
government code, chapter 395.  See
City of El Paso v. W.E.B. Invs., 950 S.W.2d 166, 169 (Tex. App.CEl Paso 1997, writ denied) (reasoning plaintiff must plead a cause of
action within the express terms of the Tort Claims Act to invoke the trial
court=s jurisdiction).  If a claim
does not fall within the terms of local government code chapter 395, then the
City retains its immunity both from suit and from liability.  See Gen. Servs. Comm=n v. Little-Tex Insulation Co., 39
S.W.3d 591, 595 (Tex. 2001).

B.  Immunity From Liability

The concept of sovereign
immunity protects municipalities from lawsuits absent legislative consent.  See Fed. Sign v. Tex. S. Univ., 951
S.W.2d 401, 405 (Tex 1997), superseded by statute on other grounds, Gen.
Servs. Comm=n, 39 S.W.3d at 593.  It consists
of two separate ideasBimmunity
from suit and immunity from liability.  Id.  DeSoto and the City agree that by
entering into written agreements concerning the impact fees, that immunity from
liability has been waived.  See Gen.
Servs. Comm=n, 39 S.W.3d at 594. 

C.  Immunity From Suit








Waiver of immunity from
liability by contract does not, however, waive immunity from suit.  See Catalina Dev., Inc. v. County of El
Paso, 121 S.W.3d 704, 705 (Tex. 2003). Rather, legislative consent is
required, and otherwise, immunity from suit deprives a court of subject
matter jurisdiction.  Travis County v.
Pelzel & Assocs., Inc., 77 S.W.3d 246, 248 (Tex. 2002).

Section 51.075 of the local
government code reads:  AThe municipality may plead and be impleaded in any court.@  Tex. Loc. Gov=t Code Ann. ' 51.075 (Vernon 1999).  This
court, in its most recent opinion on this topic held that the Asue and be sued@ language in
section 11.151(a) of the Texas Education Code waived a school district=s immunity from suit in a breach of contract suit.  See Serv. Employment Redevelopment v. Fort
Worth ISD, 163 S.W.3d 142, 159 (Tex. App.CFort Worth 2005, pet. filed).

We find no applicable
distinction between the Aplead and be
impleaded@ and the Asue and be sued@ phrases. AWe acknowledge the statute . . . includes only the language >plead and be impleaded,= and not the language >sue and be sued,= but . . .
we find no distinction.@  City of Houston v. Clear Channel Outdoor,
Inc., 161 S.W.3d 3, 7 (Tex. App.CHouston [14th Dist.] 2004, pet. filed).  Accordingly, we hold that the language in
Section 51.075 of the local government code allows this breach of contract suit
against the City.








The City asserts that DeSoto=s pleadings Afailed to
demonstrate a waiver of immunity from suit.@  We disagree.  In its second amended petition, DeSoto
asserts claims for a refund of impact fees, excessive amount of fees, breach of
contract, and takings claims, with appropriate citations to statutory and
constitutional authority to sue and factual assertions supporting those claims.  The City=s contention in this regard is without merit. 

D.  Administrative Remedies

The City argues that
exhaustion of administrative remedies is a prerequisite to bringing a contract
claim against the City.  We agree.  By invoking the Aplea and be impleaded@ language of chapter 395 in order to bring suit, we hold that the
other provisions of the chapter are also applicable, including initial
administrative remedies contained in sections 395.071, 395.077, and other
relevant sections of the local government code.








In April 2001, DeSoto
demanded a refund of its 1993 impact fee escrow by way of a letter to the City
Engineer at the City of Lewisville, including a request for any specific forms
necessary to process the request. 
Apparently not receiving a May 2001 response from the city attorney, it
again wrote the city by way of the city attorney in October 2001 with a renewed
demand.  The City Attorney responded with
a refusal of the demandBAI do not believe the developer is due a refund at this time.  Please advise if you desire additional
information.@  The City Attorney=s letter denying DeSoto=s demand states in part that the Acity of Lewisville has not taken the other steps required by Section
395 Local Government Code to impose >road impact fees.=@  Although the City did not
enact any of the Aother steps,@ administrative procedures required by local government code sections
395.041-058, it takes the position that a final decision for the return of
impact fees must be made by the city council and the city attorney cannot speak
for the council on this matter. 
Therefore, the City argues that because DeSoto did not seek a decision
from the council before filing suit, the case is not ripe for adjudication.  AA person who has exhausted all administrative remedies within the
political subdivision and who is aggrieved by a final decision is entitled to
trial de novo under this chapter.@  Tex. Loc. Gov=t Code Ann. ' 395.077(a).  Further, 

The only way that a political
subdivision of the state can act is by and through its governing body . . . .
It is a  well-settled rule that the
governing authorities of cities can express themselves and bind the cities only
by acting together in a meeting duly assembled . . . . A city counsel can
transact a city=s business
transactions only by resolution or ordinance, by majority rule of the council .
. . A city=s governing
body may not delegate the right to make decisions affecting the transaction of
city business . . . . The governing body is authorized to delegate the right to
perform acts and duties necessary to the transaction of the city=s business, but can do so only by resolution or ordinance, by a
majority vote.  








Central Power & Light Co. v. City of
San Juan, 962 S.W.2d 602, 612-13 (Tex. App.CCorpus Christi 1998, pet. dism=d w.o.j.).  No evidence is
before this court that the city attorney had been authorized by the city
council to act for it on this matter. Furthermore, since a city acts through
its council, not through its counsel, even statements by an individual council
member are not binding on the City.  Corpus
Christi v. Bayfront Assocs., 814 S.W.2d 98, 105 (Tex. App.CCorpus Christi 1991, writ denied). 
Therefore, absent authorization, statements by the City=s legal counsel are not binding as they are applied to this
matter.  








We agree that DeSoto has not
exhausted its administrative remedies by not presenting its claim directly to
the city council.  DeSoto argues that this
would be a futile gesture and unnecessary, citing Mayhew v. Town of
Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998). 
We disagree. First, as the Mayhew court notes, the
holdings in that case are based on Athe unique circumstances of this case,@ id. at 931, wherein a planned
development had been rejected by the City of Sunnyvale, which argued that
although the development proposal had been rejected, a variance had not been
requested by Mayhew after the rejection, and hence the case was not ripe for
adjudication because not all administrative remedies had been exhausted.  Id. at 931.  Unlike the case before us, there was no issue
that the proper entity had not rejected the development application.  Also, as the supreme court notes, A[a]ny other holding would require the Mayhews to expend their own time
and resources pursuing, and the Town=s time and resources considering, a development proposal that the
Mayhews would never actually develop@ because of economic impracticality.  Id. at 932 (emphasis added).  This also distinguishes the Mayhew
case from the one before us.  We decline
to apply the Mayhew holding to the facts before us and hold that DeSoto
must exhaust its administrative remedies before it may pursue this suit.  Accordingly, we overrule DeSoto=s third issue.

VII.  State Takings Claim

In its fourth issue, DeSoto
asserts that the trial court erred by determining that its state takings claim
was not ripe because no final decision had been made by the City, e.g., DeSoto=s administrative remedies were not exhausted. It is the City=s position that neither DeSoto=s state takings claim under article I, section 17 of the Texas
Constitution, nor the other causes of action, were ripe because of the failure
by DeSoto to exhaust its required administrative remedies before filing
suit.  For the reasons previously set
forth, we agree with the City. 








Citing Subaru of America
Inc. v. David McDavid Nissan Inc., 84 S.W.3d 212 (Tex. 2002), DeSoto
requests that if this court finds that all administrative remedies have not
been exhausted, we should hold that the trial court erred in granting the City=s plea to the jurisdiction without first abating the cause to afford
DeSoto an opportunity to cure the jurisdictional problem.  Noting its earlier opinion in American
Motorists  Insurance Co., v. Fodge, 63
S.W.3d 801, 805 (Tex. 2001), the court reiterated that Aif a claim is not within a court=s jurisdiction, and the impediment to jurisdiction cannot be removed,
then it must be dismissed; but if the impediment to jurisdiction could be
removed, then the court may abate proceedings to allow a reasonable opportunity
for the jurisdictional problem to be cured.@  Subaru of America Inc.,
84 S.W.3d at 228.  Although this language
is permissive (Amay abate@), a reading of the entire case indicates that the result is mandatory
(Athe trial court should abate@).  Id.  We hold that abatement was the appropriate
remedy.  We overrule DeSoto=s fourth issue in part and we sustain it in part.  We hold that the trial court erred in
granting the City=s plea to
the jurisdiction without first abating the cause to afford DeSoto a reasonable
opportunity to cure its failure to exhaust administrative remedies.  This same reasoning applies to the contract
claim contained in DeSoto=s third
issue, supra.

VIII.  Evidentiary Objections

In a single cross-point, the
City argues that the trial court erred by refusing to strike Aimproper jurisdictional evidence submitted by@ DeSoto, specifically being Exhibit A, Paragraphs 10, 11 and 14.  Those paragraphs read as follows:

10.  Developer sold all of the lots that had been
subdivided to the third-party resident purchasers.  However, less than one hundred percent (100%)
of the land in the subdivision was sold or transferred to third parties.  Although Developed dedicated land for
streets, including the Garden Ridge Boulevard Easement, Developer never
transferred title of that property.

 

11.  In selling the subdivided lots, Developer
never assigned any right of reimbursement for the repayment of the impact fees
to either the builders or residents who purchased the lots.

 








14.  On October 11, 2001, the City of Lewisville,
through correspondence from the City Attorney, refused to refund the fees back
to Developer.  A true and correct copy of
this correspondence is attached hereto as Exhibit >A-4'.  At no time has the City
notified Developer of any administrative procedure for attempting to obtain a
refund of the paid fees, and the City has never requested or demand that
Developer make use of any such administrative procedure.  The City simply refused to refund the fees
paid by Developer.

The City filed objections to
these three paragraphs, which as to Paragraphs 10 and 11 were that the
affidavit testimony violated the best evidence rule, constituted hearsay, and
was inadmissable as contradicting DeSoto=s admissions and responses to interrogatories.  As to Paragraph 14, the City=s objection was that the affidavit testimony violated the best
evidence rule, constituted hearsay, and was a conclusion. 








We review a trial court=s decision to admit or exclude evidence for an abuse of
discretion.  Owens-Corning Fiberglas
Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998).  We will not reverse a trial court for an
erroneous evidentiary ruling unless the error probably caused the rendition of
an improper judgment.  Tex. R. App. P. 44.1; Owens-Corning
Fiberglas Corp., 972 S.W.2d at 43. 
The best evidence rule provides that A[t]o prove the content of a writing, recording, or photograph, the
original writing, recording, or photograph is required . . . .@  Tex. R. Evid. 1002. 
The rule does not apply unless a party is seeking to prove the contents
of a document.  Double Diamond Inc.,
v. Van Tyne, 109 S.W.3d 848, 853 (Tex. App.CDallas 2003, no pet.).  

With regard to Paragraphs 10
and 11,  DeSoto responds that Lewsiville
had submitted  into evidence the plats
for the overall property in question and that the sum area of the individual
platted lots did not cover 100% of the area contained within the plat, and,
therefore, not 100% of the property had been conveyed.  Without agreeing whether this conclusion is
correct, we agree that since the plats were already in evidence, the best
evidence rule has been satisfied, and the complained of statements are not hearsay
because they are based on information already in evidence.  Whether Baker, the affiant, is qualified to
draw such a conclusion is not before this court.  We hold that the trial court did not abuse
its discretion by overruling those objections to Paragraph 10.  However, we have already addressed the
question of contradicting admissions and interrogatories and for that reason
and on that basis, the City=s objection is sustained.








Regarding the City=s objection that Paragraph 11 violates the best evidence rule, it
argued before the trial court that A[t]he deed should be supplied if [Baker] is going to talk about
ownership.@  However, neither partyCas far as we can tell from the recordCwas attempting to prove the contents of the deed(s).  Therefore, the best evidence rule does not
apply.  See Van Tyne, 109
S.W.3d at 853.  Moreover, the statement
indicates a non-event; it states that something did not occur.  It is hard to envision how the deed would be
the best evidence of something that never happened.  Again, whether Baker is qualified to make
such a statement is not before the court. 
We hold that the trial court did not abuse its discretion by overruling
the City=s objection to Paragraph 11.

With respect to Paragraph 14,
considering that the letter from the city attorney was in evidence, the best
evidence rule is not implicated, nor is the hearsay rule, because Baker is not
repeating what someone else said.  We
also hold that no Aconclusion@ is stated.  Accordingly, the
trial court did not abuse its discretion by overruling the City=s objection to Paragraph 14.  We
overrule the City=s
cross-point.  

IX.  Conclusion








In sum, we hold that DeSoto
does not have standing to pursue its return-of-impact-fee claim or its
refund-of-impact-fee claim.  It also does
not have standing to pursue its contract claim or its state takings claim, but
these claims should have been abated by the trial court to afford DeSoto an
opportunity to cure the exhaustion-of-administrative-remedies jurisdictional
defect.  The trial court=s judgment as to the return of, and refund of, impact fee claims is
affirmed.  The trial court=s judgment as to the contract and state takings claims is reversed and
those claims are remanded to the trial court with instructions that the trial court
abate its proceedings to afford DeSoto a reasonable opportunity to exhaust its
administrative remedies regarding its breach of contract and state takings
claims.

 

BOB MCCOY

JUSTICE

 

PANEL
B:   HOLMAN, GARDNER, and MCCOY, JJ.

 

DELIVERED:  January 19, 2006











[1]Specifically,
section 4.2.2 of the Lewisville General Development Ordinance holds a developer
responsible for one-half of the construction of a street abutting the
development. 





[2]AIn my
opinion, the agreements are clear that the time of construction by the City is
in its sole discretion . . . . I do not believe that the developer is due a
refund at this time.@ 





[3]In
other words, as DeSoto states in its brief, AImpact fees are generally
described as charges on new development to pay for new public facilities that
become necessary as the result of city growth in a particular area.@





[4]The
legislative exchange was as follows: Question by committee memberBASome
of my cities have subdivision ordinances and we require developers to pay for
streets and sewers and all, which has worked pretty well in those cities.  Does this change it in any way?  Does this keep my cities from doing that if
they want to?@  Answer by author Senator FarabeeBANo,
no, there is no thing that would stop the cities from requiring the curbing of
streets within the subdivision.@  Op. Tex. Att=y
Gen. No. 97-048 (1997).





[5]Attorney
General opinions are not binding on this court. 
SeePack v. Crossraods Inc., 53 S.W.3d 492, 504 (Tex. App.CFort
Worth 2001, pet. denied).





[6]It
would be nonsensical to adopt DeSoto=s argument that the statute
means it could request a refund because it originally paid the fee
although it sold its ownership before requesting a refund,
thereby precluding receipt of a refund to it.  AThe best prophet is a common
sense.@  Euripides, Helen, (412 B.C.).





[7]Tex. R. Civ. P. 198.3.





[8]As
this is not disputed by the City, we will accept this assertion as true.  See Tex.
R. App. P. 38.1(f); see also Tex.
Loc. Gov=t
Code Ann. ''
395.011(b), 395.041 (Vernon 1999) (indicating that the City may impose an
impact fee only if it is done in a manner conforming with chapter 395 and
stating that A[e]xcept
as otherwise provided by this chapter, a political subdivision must comply with
this subchapter to levy an impact fee.@).