NEW CANEY INDEPENDENT SCHOOL DISTRICT And the New Caney Independent School District Board of Trustees as Body Corporate In the Name of New Caney Independent School District, Appellants

v.

BURNHAM AUTOCOUNTRY, INC., Appellee

No. 06-00-00024-CV.

Court of Appeals of Texas, Texarkana.

Submitted July 13, 2000.

Decided Sept. 7, 2000.

Dennis Eichelbaum, Schwartz & Eichelbaum, PC, Plano, for appellant.

J. Mitchell Smith, Wells, Peyton, Greenberg & Hunt, LLP, Beaumont, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

OPINION

WILLIAM J. CORNELIUS, Chief Justice.

The New Caney Independent School District appeals from a summary judgment rendered in favor of Burnham AutoCountry, Inc.

Burnham AutoCountry submitted a bid to provide motor vehicles for the New Caney Independent School District. The bid documents submitted by Burnham specified individual prices for each type of vehicle to be furnished, as well as a grand total price. The District sent Burnham a letter confirming the acceptance of its bid, specifically referencing the grand total sum. Burnham began delivery of the vehicles in April of 1995. The District paid for the first eighteen vehicles on the price-per-unit basis specified in the bid as each one was delivered. On September 6, 1995, Burnham delivered the nineteenth vehicle. The District made a partial payment, but refused to pay the remaining $4,676.00 for that vehicle. Burnham thereafter delivered the remaining two vehicles, but the District refused to make any further payment, contending that it had fully paid the total amount required by the accepted bid. Burnham filed suit to collect the total amount of the individual vehicle prices.

Burnham took the position that there was a mathematical error in the calculation of the grand total sum, and that the contract required the District to pay the arithmetic sum of the individually-priced units rather than the grand total. Burnham moved for summary judgment.[1] The District responded and filed its own motion for a no-evidence summary judgment. The District's position is that it agreed in the contract to pay the grand total sum, and that Burnham was not entitled to collect any more than that.

The trial court granted Burnham's motion on the breach of contract grounds. All other grounds for recovery and all other motions were denied or overruled.

The District contends on appeal: (1) that as a matter of law it did not breach the contract with Burnham; (2) that it was entitled to summary judgment; and (3) that the trial court had no jurisdiction over the subject matter of the suit because Burnham failed to exhaust its administrative remedies.

We will address the jurisdictional issue first. The District contends that Burnham was required to exhaust certain administrative remedies before filing its lawsuit, and that its failure to do so deprives the trial court and this Court of jurisdiction. The District correctly notes that subject matter jurisdiction is fundamental and cannot be waived, but may be raised at any time. *Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 448–49 (Tex.1996); *Tullos v. Eaton Corp.*, 695 S.W.2d 568 (Tex.1985). The District cites Tex. Educ.Code Ann. § 7.057 (Vernon 1996), which reads in part as follows:

(a) Except as provided by Subsection (e), a person may appeal in writing to the commissioner if the person is aggrieved by:

(1) the school laws of this state; or

(2) actions or decisions of any school district board of trustees that violate:

---

1. Burnham originally sued both the New Caney Independent School District and the New Caney Independent School District Board of Trustees as a Body Corporate in its official capacity, as separate entities. Although the School District initially filed an answer, the Board of Trustees did not, and Burnham took a default judgment against the Board of Trustees. That action resulting in a default judgment against the Board of Trustees was sev-ered from the remainder of the lawsuit, and an appeal was taken. This Court, on appeal, set aside the default judgment, ruling that the answer filed by the School District operated to the benefit of the Board of Trustees. *New Caney Indep. Sch. Dist. v. Burnham Auto-Country, Inc.*, 960 S.W.2d 957 (Tex.App.-Texarkana 1998, no pet.). The actions were then "reconsolidated" and the lawsuit continued.

(A) the school laws of this state; or

(B) a provision of a written employment contract between the school district and a school district employee, if a violation causes or would cause monetary harm to the employee.

Although the administrative process is applicable to many actions involving school districts, such as teacher termination and contract disputes and student disciplinary appeals,[2] the Supreme Court has held that an action by an outside vendor against a school district for debt and breach of contract does not relate to the administration of school laws. *Spring Branch Indep. Sch. Dist. v. Metalab Equip. Co.*, 381 S.W.2d 48 (Tex.1964). This case is controlling here, because Burnham's lawsuit is one for breach of contract for vehicles furnished the school district under contract. The District has not pointed to any specific school law allegedly violated or which controls the issues raised in Burnham's suit. It does cite TEX. EDUC.CODE ANN. § 44.031 (Vernon 1996 & Supp.2000), which sets forth requirements for bidding on school district contracts, but it fails to point out, and our review of the record does not reveal, any factual or legal issue relating to the procedure for bidding on school contracts. The District also cites *R.G.V. Vending v. Weslaco Indep. Sch. Dist.*, 995 S.W.2d 897 (Tex.App.-Corpus Christi 1999, no pet.), a case involving an unsuccessful bidder for installation and service of snack vending machines at schools. RGV Vending sued the school district, alleging that in failing to award it the contract the Board had ignored Section 44.031 of the Education Code. The trial court dismissed the action on motion of the school board, holding that the statute required RGV Vending to appeal to the commissioner of education, i.e., exhaust its administrative remedies before filing suit. The Court of Appeals reversed, holding that while the school laws were in question, there were three recognized exceptions to the exhaustion requirements. The exceptions are (1) where the allegations raise pure questions of law; (2) where the school board acted without authority and contrary to express statutes; and (3) where the party will suffer irreparable harm and the agency is unable to provide relief. *R.G.V. Vending v. Weslaco Indep. Sch. Dist.*, 995 S.W.2d at 899. The court found that the question raised in that suit related to the board's authority to accept bids for contracts rather than bidding procedures, and that it was not subject to exhaustion requirements. *R.G.V. Vending v. Weslaco Indep. Sch. Dist.*, 995 S.W.2d at 899. The school board's position in *R.G.V. Vending*, that exhaustion was required, was based on the fact that the issue in that case unquestionably related directly to interpretation of facts and law pertaining to a specific school law. The Court of Appeals recognized, however, that even when school laws are involved, there are exceptions to the general requirement of exhaustion.

We find that the issues in this case do not pertain to the school laws, and therefore are not subject to the exhaustion of remedies requirement.

■ The District also contends that the trial court erred in granting Burnham's motion for summary judgment on grounds of breach of contract, and that the court erroneously denied the District's own motion for summary judgment.

The District asserts that the summary judgment evidence conclusively establishes that, because of the conflicting prices set forth in the bid document, no contract was ever formulated. It points out the requisites for a valid contract: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Copeland v. Also-*

---

2.  *See, e.g., Grimes v. Stringer*, 957 S.W.2d 865, 869 (Tex.App.-Tyler 1997, pet. denied); *Washington v. Tyler Indep. Sch. Dist.*, 932 S.W.2d 686 (Tex.App.-Tyler 1996, no writ); *Jones v. Dallas Indep. Sch. Dist.*, 872 S.W.2d 294 (Tex.App.-Dallas 1994, writ denied).

*brook,* 3 S.W.3d 598, 604 (Tex.App.-San Antonio 1999, pet. denied); *Buxani v. Nussbaum,* 940 S.W.2d 350, 352 (Tex.App.-San Antonio 1997, no pet.). The District contends that the conflicting numbers demonstrate there was no meeting of the minds.

■ The determination of whether there was a meeting of the minds of the parties is based on the objective standard of what the parties actually said and did, rather than on their subjective state of mind. *Copeland v. Alsobrook,* 3 S.W.3d at 604. There is summary judgment evidence that Burnham submitted its bid both with prices per model of vehicle and with a total price if all twenty-one vehicles were purchased. The summary judgment evidence also shows that, in a letter from the District to Burnham, the District confirmed with Burnham the *total stated amount* in the contract for the delivery of all twenty-one vehicles. There is no summary judgment evidence that until a dispute arose over the correct price, Burnham did not consider that price to be part of its agreement.

The summary judgment evidence further shows that the written agreement on its face demonstrates that the parties met the legal requirements for a valid contract, including a meeting of the minds, that Burnham delivered the vehicles to the school district, and that the school district paid Burnham the total price for all the vehicles. There is no summary judgment evidence showing a lack of a meeting of the minds at the time the bid contract was executed by both parties, and until the time of the delivery of the final three vehicles, both parties' actions were consistent with a valid agreement between them.

We therefore hold that the parties did enter into a valid contract.

The parties have briefed this appeal as if there was a mistake in the terms of Burn-

ham's bid. The District cites the case of *James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist.,* 160 Tex. 617, 335 S.W.2d 371 (1960), in which a similar problem with a bid arose due to a mathematical miscalculation of certain figures in the bid. While the fact situation may be similar to that here, procedurally the case stands in a much different posture. In *Taylor,* the contractor sought equitable relief by way of rescission. The mistake in the numbers was discovered soon after the bid was awarded to Taylor, and Taylor refused to execute the contract for the lower number. The suit was filed by the school district to recover the difference between Taylor's lowest, but mistaken, bid and the next lowest bid, which the district eventually had to accept. *James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist.,* 335 S.W.2d at 372. The entire opinion in that case relates to whether Taylor, the bidder, was entitled to equitable relief by way of rescission because of his unilateral mistake.[3]

■ Burnham does not seek to rescind the agreement; it rather seeks damages for breach of contract for the difference between the amount stated as the total contract price and the arithmetic sum of the prices listed for the individual vehicles. Because we have found that the parties formulated a valid contract, our task is to interpret the contract to determine whether the District is obligated for the total of the individual prices or the amount stated as the grand total. To do that we must determine the intent of the parties. Neither party pleaded that the contract is ambiguous, and both parties moved for summary judgment. When both parties file motions for summary judgment, the proper disposition is for the appellate court to render judgment for the party whose motion should have been granted. *Webb v. Lawson–Avila Constr.,*

---

**3.** See cases collected at David B. Harrison, Annotation, *Right of Bidder for State or Municipal Contract to Rescind Bid Upon Ground* *That Bid Was Based On His Own Mistake Or That of His Employee,* 2 A.L.R.4th 991 (1980).

*Inc.,* 911 S.W.2d 457, 459 (Tex.App.-San Antonio 1995, writ dism'd).

■ The interpretation of a written contract is a matter of determining the intention of the parties. *Reilly v. Rangers Mgmt., Inc.,* 727 S.W.2d 527, 529 (Tex. 1987). Because neither party alleges that the agreement is ambiguous, the interpretation is a question of law for the court. *ACS Investors v. McLaughlin,* 943 S.W.2d 426, 430 (Tex.1997); *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968); *Webb v. Lawson–Avila Constr., Inc.,* 911 S.W.2d at 459–60.

■ In construing a contractual provision, it is the *objective,* not the *subjective,* intent of the parties that controls. It is the intent *expressed or apparent in the writing* that is controlling. *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d at 518; *American–Amicable Life Ins. Co. v. Lawson,* 419 S.W.2d 823, 826 (Tex.1967).

The contract in question contains the following provision on the opening page of the bid, spelled out in capital letters: "IT SHALL BE THE VENDOR'S RESPONSIBILITY TO REVIEW AND COMPLY WITH THE TERMS AND CONDITIONS OF THIS BID AS OUTLINED HEREAFTER." The contract also provides: "Bids will represent a true and correct statement and shall contain no cause for claim of omission or error," and, "No bid can be altered or amended after opening time." Price is one specifically stated consideration of the District when evaluating the bids. The contract states, "Award of this bid is NOT limited to one vendor. For example, the School District may elect to purchase the passenger automobiles from Vendor A, the pickup trucks from Vendor B, and the cargo vans from Vendor C." Following the specifications and bid amount for each type of vehicle wanted, there is a statement, in capital letters: "GRAND TOTAL PRICE *IF ALL 21 VEHICLES WERE PURCHASED FROM YOUR AGENCY ...*" (emphasis added).

■ In construing an unambiguous written contractual document, the goal of ascertaining the express intentions of the parties requires that we examine the entire document and consider each part with every other part so that the effect and meaning of one part on any other part may be determined. We presume that the parties intended every clause to have some effect. *Heritage Res., Inc. v. Nations-Bank,* 939 S.W.2d 118, 121 (Tex.1996).

We believe the interpretation made by the trial court violates this established principle of contract interpretation. The trial court has given the individual bids for each type of vehicle priority over the "Grand Total Price." The grand total price, however, has special significance because the bid could be awarded to different dealers, depending on their bid amounts for each type of vehicle. There would be no reason to include this grand total amount, with the additional phrase "if all 21 vehicles" were purchased from one dealership if it were not significant. It is certainly a reasonable construction of the contract to assume that the grand total price is a discount for bulk purchases if all twenty-one vehicles, as opposed to fewer than all, were purchased from one dealer. The trial court's interpretation renders the grand total sum meaningless and enforces the contract on the basis of what it supposed the parties meant to say instead of the meaning of what they did say. Such a construction is improper. We cannot agree with the trial court that the intent manifested in the plain contractual language was that the District was to pay Burnham the sum of each vehicle's price; rather, the language of the agreement indicates Burnham intended to obligate itself to furnish all of the twenty-one vehicles for the stated grand total amount.

For the reasons stated, we reverse the summary judgment for Burnham and render judgment that Burnham take nothing.