COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-221-CV

MARLENE GRINDINGER APPELLANT

V.

JON KIXMILLER AND APPELLEES

DEBORAH KIXMILLER

------------

FROM COUNTY COURT AT LAW NO. 2 OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Marlene Grindinger appeals the trial court’s judgment entered on a jury’s findings that she breached a real estate contract with Jon and Deborah Kixmiller (“Kixmillers”) and violated the Texas Deceptive Trade Practices Act (“DTPA”).  In three issues, Grindinger contends that the evidence is legally insufficient to support the jury’s finding that a contract existed,
(footnote: 2) that the trial court erred by denying her motion for a directed verdict on the Kixmillers’ DTPA claim, and that, if this court reverses the trial court’s judgment, she is entitled to recover attorneys’ fees.  We will affirm.

II.  Factual and Procedural Background

Grindinger is a licensed realtor who assisted the Kixmillers in selling and purchasing real estate.  The Kixmillers employed Grindinger to sell their Bartonville, Texas home and to act as their buyer’s agent in the purchase of a new home they liked in Double Oak, Texas—a home for which Grindinger also happened to be the listing agent.  So Grindinger served as both the listing and buyer’s agent for the Double Oak home.  The Kixmillers made an offer to purchase the Double Oak home, contingent upon the sale of their Bartonville home.  To induce the Kixmillers to make that offer, Grindinger agreed to reduce her commission on the Bartonville home from six percent to four percent and offered to rebate $6,000 of her commission from the sale of the Double Oak home to the Kixmillers.
(footnote: 3)  Grindinger handwrote the commission reduction and the rebate provisions on a preprinted listing agreement, which she signed and gave to the Kixmillers.  The Kixmillers signed a second copy of the listing agreement that did not contain Grindinger’s handwritten alterations. 

Grindinger and the Kixmillers soon discovered a buyer for the Bartonville home.  On closing day, the Kixmillers noticed that the closing paperwork omitted the $6,000 rebate.  The Kixmillers complained about this omission, so Grindinger gave the Kixmillers a handwritten note stating that they could choose between the $6,000 rebate or a $13,500 commission reduction.
(footnote: 4)  The Kixmillers closed that day and purchased the Double Oak home, but they never received the $6,000 rebate from Grindinger. 

Consequently, the Kixmillers sued Grindinger for breach of contract, violations of the DTPA, and statutory fraud.  The Kixmillers alleged that the listing agreement that they agreed to contained the $6,000 rebate offer.  At trial, several copies of the listing agreement were admitted into evidence.  The only listing agreement produced at trial containing the $6,000 rebate offer and the subsequently negotiated commission reduction was signed and initialed on each page solely by Grindinger.
(footnote: 5)  Grindinger does not dispute that she signed that listing agreement or gave it to the Kixmillers.  The Kixmillers produced a second listing agreement, which did not contain the $6,000 rebate or the commission reduction.  This second agreement was signed and initialed only by the Kixmillers.  Grindinger produced a third listing agreement, which did not contain the $6,000 rebate or the subsequent commission reduction but was signed and initialed by both Grindinger and the Kixmillers. 

After the Kixmillers closed their case-in-chief, Grindinger moved for a directed verdict on the DTPA claim, arguing that the Kixmillers’ claim sounded exclusively in contract.  The trial court took the motion under advisement.  At the close of all the evidence, Grindinger renewed her motion for a directed verdict, and the trial court denied the motion.  The jury ultimately found that Grindinger breached the contract and violated the DTPA, but did not commit statutory fraud.  Grindinger filed a motion for new trial, alleging that the trial court erred by denying her motion for directed verdict and that the evidence was insufficient to support the jury’s verdict on the breach of contract and DTPA claims.  The motion for new trial was overruled by operation of law.  
See 
Tex. R. Civ. P.
 329b(c).  Grindinger timely filed her notice of appeal. 

III.  The Rebate Agreement

The elements of a valid and enforceable contract are (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party’s consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding.  
Hubbard v. Shankle
, 138 S.W.3d 474, 481 (Tex. App.—Fort Worth 2004, pet. denied).  In her first issue, Grindinger contends that the evidence is insufficient to support the jury’s affirmative answer to special question number one—the question regarding the existence of a contract including a rebate agreement—because no evidence exists of the third and fifth elements listed above.
(footnote: 6) 

A.  Standard of Review

A legal sufficiency challenge may only be sustained when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact.  
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998),
 cert. denied
, 526 U.S. 1040 (1999);
 Robert W. Calvert, 
“No Evidence”
 
and “Insufficient Evidence” Points of Error
, 38 T
EX
. L. R
EV
. 361, 362-63 (1960)
.  In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable fact-finder could, and disregard evidence contrary to the finding unless a reasonable fact-finder could not.
  
City of Keller v. Wilson
, 
168 S.W.3d 802, 827
 (Tex. 2005). 

B. Meeting of the Minds

The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective states of mind.  
Best Buy Co. v. Barrera
, No. 13-05-00258-CV, 2006 WL 3438521, at *4 (Tex. App.—Corpus Christi Nov. 30, 2006, pet. filed); 
Komet v. Graves
, 40 S.W.3d 596, 601 (Tex. App.—San Antonio 2001, no pet.); 
New Caney Indep. Sch. Dist. v. Burnham AutoCountry, Inc.
, 30 S.W.3d 534, 538 (Tex. App.—Texarkana 2000, pet. denied).  The parties must indicate, either expressly or through their conduct, that they mutually intend to contract.  
See Williford Energy Co. v. Submergible Cable Servs., Inc.
, 895 S.W.2d 379, 384 (Tex. App.—Amarillo 1994, no writ).  

Here, neither party disputed that Grindinger made the rebate offer, that the Kixmillers accepted the offer, or that both parties consented to the terms of the offer.  Jon Kixmiller testified that Grindinger came to his home with a preprinted listing agreement, changed the listing price of the Bartonville home, and inserted a handwritten offer to rebate $6,000 of her commission on the sale of the Double Oak home.  Deborah Kixmiller also testified that Grindinger made the offer, that the Kixmillers accepted the offer, and that they relied on the offer in deciding to purchase a new home.  Grindinger herself admitted that she offered the rebate that day, that the Kixmillers accepted her offer that day, and that she signed and initialed the listing agreement containing the rebate offer that day and left the other copy with the Kixmillers.
(footnote: 7)  Grindinger’s conduct, viewed by an objective standard, demonstrates a meeting of the minds and an intent to contract.  
See Best Buy Co.
, 2006 WL 3438521, at *4; 
Komet
, 40 S.W.3d at 601.

The Kixmillers’ subsequent conduct also demonstrates a meeting of the minds.  The Kixmillers testified that this $6,000 rebate offer “pushed [them] over the top” in deciding to purchase the Double Oak home.  The Kixmillers took all necessary steps to close on the homes due, at least in part, to the $6,000 rebate.  Had the Kixmillers not intended to contract for the $6,000 rebate, they would not have objected to its omission on the day scheduled for closing the sale of their Bartonville home and the purchase of the Double Oak home.  After objecting to that omission, and after Grindinger handwrote a note to Jon Kixmiller again reciting the $6,000 rebate offer, the Kixmillers closed on both homes.  The Kixmillers’ conduct, viewed by an objective standard, provides additional evidence of a meeting of the minds and an intent to contract.  
See Best Buy Co.
, 2006 WL 3438521, at *4; 
New Caney Indep. Sch. Dist.
, 30 S.W.3d at 538.

Considering the evidence favorable to the trial court’s finding, and disregarding evidence to the contrary unless a reasonable fact-finder could not, we hold that the evidence was legally sufficient to establish that a meeting of the minds did occur.  
See City of Keller
, 168 S.W.3d at 827.

C.  Execution of the Contract 

Grindinger also argues that because the only listing agreement containing the rebate offer was signed solely by herself, the rebate agreement was not part of a properly executed contract and was not binding under the statute of frauds.  The Kixmillers argue that any statute of frauds argument is improper because Grindinger failed to assert it as an affirmative defense, that the statute of frauds is nevertheless satisfied, and that there was sufficient evidence for the jury to find that the listing agreement containing the rebate offer was the true listing agreement. 

We first address Grindinger’s statute of frauds argument.
(footnote: 8)  The statute of frauds states that a binding agreement is one that is in writing and 
signed by the party to be charged with the agreement
.  
See
 
Tex. Bus. & Com. Code Ann.
 § 26.01(a) (Vernon 2006); 
Knight v. Hicks
, 505 S.W.2d 638, 642 (Tex. Civ. App.—Amarillo 1974, writ ref’d n.r.e.) (applying statute of frauds to listing agreements); 
Allison v. Means
, 352 S.W.2d 789, 791 (Tex. Civ. App.—Fort Worth 1961, writ ref’d n.r.e.) (applying statute of frauds to listing agreements).  Here, the listing agreement that contained the $6,000 rebate offer satisfies the  statute of frauds because it was signed by Grindinger—the party to be charged with the agreement.  
See 
 
Tex. Bus. & Com. Code Ann.
 § 26.01.  Accordingly, here the statute of frauds is not a defense to the Kixmillers’ enforcement of the rebate agreement against Grindinger.  
See, e.g., Street v. Johnson
, 96 S.W.2d 427, 429 (Tex. Civ. App.—Amarillo 1936, no writ) (explaining that "[w]hen the memorandum contains within itself, all the particulars of a concluded contract, it need only be signed by the party against whom it is sought to be enforced”).

There was also sufficient evidence for the jury to find that the listing agreement containing the rebate offer constituted the true agreement of the parties.  As outlined above, multiple versions of the listing agreement were admitted into evidence, as well as the note handwritten by Grindinger to the Kixmillers on the day of closing.  Deborah Kixmiller testified that when Grindinger came to the Kixmillers’ home to discuss the listing agreements, she brought two preprinted listing agreements with her.  At that meeting, the Kixmillers and Grindinger discussed the purchase of a new home and the sale of the Kixmillers’ current home. 

A dispute arose at trial as to whether the Kixmillers signed the versions of the listing agreement that did not contain the rebate offer before Grindinger actually made the offer.  It was the jury’s job to resolve this factual dispute, and the jury resolved it against Grindinger.  Ample evidence supports the jury’s implied finding that the Kixmillers did not sign any listing agreement until after Grindinger incorporated the commission reduction and the rebate into the parties’ agreement.  The Kixmillers both testified that Grindinger made the rebate offer that day at their house.  Grindinger testified that she made the rebate offer that day as well.  The Kixmillers both testified that they accepted that rebate offer.  Grindinger also testified that they accepted the offer.  The Kixmillers both testified that they relied on the rebate offer in deciding to purchase the Double Oak home, implying that the Kixmillers did not execute the listing agreement before the rebate offer was made.  Both Grindinger and the Kixmillers also testified that Grindinger again offered the $6,000 rebate via handwritten note on the day of closing.

Considering all of the evidence favorable to the jury’s finding that the agreement containing the rebate was the official agreement between the parties, and disregarding evidence to the contrary unless a reasonable fact-finder could not, we hold that the evidence was legally sufficient to support the jury’s finding that the rebate offer was part of the agreement.  
See City of Keller
, 168 S.W.3d at 827.  Having held that the evidence is legally sufficient to support the jury’s implied findings in connection with special question number one that there was a meeting of the minds and an enforceable contract, we overrule Grindinger’s first issue.

V.  Conclusion

Because we have determined that the evidence is legally sufficient to support the jury’s finding in special question one, that the parties agreed that Grindinger would rebate $6,000 to the Kixmillers in connection with the purchase of the Double Oak home and would reduce her commission in connection with the sale of the Bartonville home, we overrule Grindinger’s first issue.

We need not address Grindinger’s second issue because it challenges only the jury’s findings on the Kixmillers’ alternative theory of recovery, DTPA.  
See 
Tex. R. App. P.
 47.1.  The evidence supports the Kixmillers’ recovery under their breach of contract theory, so we need not address their alternative recovery on their DTPA claim.
(footnote: 9)  
See, e.g., Norwest Mortgage, Inc. v. Salinas
, 999 S.W.2d 846, 865 (Tex. App.—Corpus Christi 1999, pet. denied) (holding that there is no need to address remaining breach of contract issue where the trial court’s judgment could be supported on the basis of a DTPA claim).  Likewise, we need not address Grindinger’s third issue because it is a conditional issue, urging us to award her attorneys’ fees in the event we reverse the trial court’s judgment.  Because we overrule Grindinger’s first issue and do not address her second issue, the condition precedent to her third issue does not exist.  We affirm the trial court’s judgment. 

SUE WALKER

JUSTICE

PANEL A:  CAYCE, C.J.; WALKER and MCCOY, JJ.

DELIVERED:  February 22, 2007 

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Neither Grindinger’s issue nor the associated argument specifies whether she is challenging only the legal sufficiency of the evidence or both the legal and factual sufficiency.  But the prayer for relief in her brief urges this court “to sustain the legal sufficiency issues, reverse the trial court judgment, and render judgment for Grindinger in this action, including the attorneys’ fees incurred in the trial court and this Court.”  Accordingly, we will treat Grindinger’s first issue as challenging legal sufficiency only.

3:
Grindinger later agreed to reduce her commission from four percent to two percent.

4:
This $13,500 commission reduction was a term that Grindinger and the Kixmillers negotiated after Grindinger made the $6,000 rebate offer and is calculated from Grindinger’s agreement to again reduce her commission from four percent to two percent. 

5:
Page two of this listing agreement did contain the Kixmillers’ initials, but the testimony at trial revealed that this page was added separately after further negotiations.

6:
Special question number one asked,

Did the parties agree that Marlene Grindinger would rebate $6,000.00 to Jon and Deborah Kixmiller in connection with the sale of the property located at 325 Oak Trail, Double Oak, Texas, in addition to the reduced commission in connection with the sale of the property located at 1640 Gibbons Road, South, Bartonville, Texas?

Question number two asked whether Grindinger had breached this agreement, and the jury answered yes.  Neither party lodged objections to these charge questions.

7:
There was also no dispute that Grindinger again offered the $6,000 rebate to the Kixmillers on the day of closing.

8:
Although Grindinger failed to plead the statute of frauds, she argues that the issue was tried by consent and therefore preserved for appeal.
  
Compare 
Tex. R. Civ. P.
 94 (requiring a pleading to preserve argument regarding an affirmative defense or matter of avoidance) 
with 
Tex. R. Civ. P.
 67 (stating that issue tried by express or implied consent alleviates burden to plead affirmative defense) 
and Nicol v. Gonzales
, 127 S.W.3d 390, 393 (Tex. App.—Dallas 2004, no pet.) (same).  For the reasons set forth below, regardless of whether Grindinger preserved her statute of frauds issue, the statute of frauds was satisfied here.  

9:
Although the jury found for the Kixmillers on the DTPA claim, it entered a negative finding to the “knowing” question, and awarded $6,000 on the DTPA claim—the same amount it awarded based on the breach of contract finding.