COURT
OF APPEALS

SECOND DISTRICT
OF TEXAS

FORT WORTH

 

 

NO. 2-06-221-CV

 

 

 

MARLENE GRINDINGER                                                        APPELLANT

 

                                                   V.

 

JON
KIXMILLER AND                                                            APPELLEES

DEBORAH KIXMILLER

------------

 

FROM COUNTY COURT AT LAW
NO. 2 OF DENTON COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

 

I.  Introduction








Appellant Marlene Grindinger appeals the trial
court=s
judgment entered on a jury=s
findings that she breached a real estate contract with Jon and Deborah
Kixmiller (AKixmillers@) and
violated the Texas Deceptive Trade Practices Act (ADTPA@).  In three issues, Grindinger contends that the
evidence is legally insufficient to support the jury=s
finding that a contract existed,[2]
that the trial court erred by denying her motion for a directed verdict on the
Kixmillers= DTPA claim, and that, if this
court reverses the trial court=s
judgment, she is entitled to recover attorneys=
fees.  We will affirm.

II.  Factual and Procedural Background








Grindinger is a licensed realtor who assisted the
Kixmillers in selling and purchasing real estate.  The Kixmillers employed Grindinger to sell
their Bartonville, Texas home and to act as their buyer=s agent
in the purchase of a new home they liked in Double Oak, TexasCa home
for which Grindinger also happened to be the listing agent.  So Grindinger served as both the listing and
buyer=s agent
for the Double Oak home.  The Kixmillers
made an offer to purchase the Double Oak home, contingent upon the sale of
their Bartonville home.  To induce the
Kixmillers to make that offer, Grindinger agreed to reduce her commission on
the Bartonville home from six percent to four percent and offered to rebate
$6,000 of her commission from the sale of the Double Oak home to the
Kixmillers.[3]  Grindinger handwrote the commission reduction
and the rebate provisions on a preprinted listing agreement, which she signed
and gave to the Kixmillers.  The
Kixmillers signed a second copy of the listing agreement that did not contain
Grindinger=s handwritten alterations. 

Grindinger and the Kixmillers soon discovered a
buyer for the Bartonville home.  On
closing day, the Kixmillers noticed that the closing paperwork omitted the
$6,000 rebate.  The Kixmillers complained
about this omission, so Grindinger gave the Kixmillers a handwritten note
stating that they could choose between the $6,000 rebate or a $13,500
commission reduction.[4]  The Kixmillers closed that day and purchased
the Double Oak home, but they never received the $6,000 rebate from Grindinger.









Consequently, the Kixmillers sued Grindinger for
breach of contract, violations of the DTPA, and statutory fraud.  The Kixmillers alleged that the listing
agreement that they agreed to contained the $6,000 rebate offer.  At trial, several copies of the listing
agreement were admitted into evidence. 
The only listing agreement produced at trial containing the $6,000
rebate offer and the subsequently negotiated commission reduction was signed
and initialed on each page solely by Grindinger.[5]  Grindinger does not dispute that she signed
that listing agreement or gave it to the Kixmillers.  The Kixmillers produced a second listing
agreement, which did not contain the $6,000 rebate or the commission reduction.  This second agreement was signed and initialed
only by the Kixmillers.  Grindinger
produced a third listing agreement, which did not contain the $6,000 rebate or
the subsequent commission reduction but was signed and initialed by both
Grindinger and the Kixmillers. 








After the Kixmillers closed their case-in-chief,
Grindinger moved for a directed verdict on the DTPA claim, arguing that the
Kixmillers= claim sounded exclusively in
contract.  The trial court took the
motion under advisement.  At the close of
all the evidence, Grindinger renewed her motion for a directed verdict, and the
trial court denied the motion.  The jury
ultimately found that Grindinger breached the contract and violated the DTPA,
but did not commit statutory fraud. 
Grindinger filed a motion for new trial, alleging that the trial court
erred by denying her motion for directed verdict and that the evidence was
insufficient to support the jury=s
verdict on the breach of contract and DTPA claims.  The motion for new trial was overruled by
operation of law.  See Tex. R. Civ. P. 329b(c).  Grindinger timely filed her notice of appeal.


III.  The Rebate Agreement

The elements of a valid and enforceable contract
are (1) an offer; (2) an acceptance in strict compliance with the terms of the
offer; (3) a meeting of the minds; (4) each party=s
consent to the terms; and (5) execution and delivery of the contract with the
intent that it be mutual and binding.  Hubbard
v. Shankle, 138 S.W.3d 474, 481 (Tex. App.CFort
Worth 2004, pet. denied).  In her first
issue, Grindinger contends that the evidence is insufficient to support the
jury=s affirmative
answer to special question number oneCthe
question regarding the existence of a contract including a rebate agreementCbecause
no evidence exists of the third and fifth elements listed above.[6]









A.  Standard of Review

A legal sufficiency challenge may only be
sustained when (1) the record discloses a complete absence of evidence of a
vital fact, (2) the court is barred by rules of law or of evidence from giving
weight to the only evidence offered to prove a vital fact, (3) the evidence
offered to prove a vital fact is no more than a mere scintilla, or (4) the
evidence establishes conclusively the opposite of a vital fact.  Uniroyal Goodrich Tire Co. v. Martinez,
977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S. 1040 (1999); Robert
W. Calvert, ANo Evidence@ and AInsufficient
Evidence@ Points of Error, 38 TEX. L. REV. 361,
362-63 (1960).  In determining whether there
is legally sufficient evidence to support the finding under review, we must
consider evidence favorable to the finding if a reasonable fact-finder could,
and disregard evidence contrary to the finding unless a reasonable fact-finder
could not.  City of Keller v. Wilson,
168 S.W.3d 802, 827 (Tex. 2005). 

B. Meeting of the Minds








The determination of a meeting of the minds, and
thus offer and acceptance, is based on the objective standard of what the
parties said and did and not on their subjective states of mind.  Best Buy Co. v. Barrera, No.
13-05-00258-CV, 2006 WL 3438521, at *4 (Tex. App.CCorpus
Christi Nov. 30, 2006, pet. filed); Komet v. Graves, 40 S.W.3d 596, 601
(Tex. App.CSan Antonio 2001, no pet.); New
Caney Indep. Sch. Dist. v. Burnham AutoCountry, Inc., 30 S.W.3d 534, 538
(Tex. App.CTexarkana 2000, pet.
denied).  The parties must indicate,
either expressly or through their conduct, that they mutually intend to contract.  See Williford Energy Co. v. Submergible
Cable Servs., Inc., 895 S.W.2d 379, 384 (Tex. App.CAmarillo
1994, no writ).  








Here, neither party disputed that Grindinger made
the rebate offer, that the Kixmillers accepted the offer, or that both parties
consented to the terms of the offer.  Jon
Kixmiller testified that Grindinger came to his home with a preprinted listing
agreement, changed the listing price of the Bartonville home, and inserted a
handwritten offer to rebate $6,000 of her commission on the sale of the Double
Oak home.  Deborah Kixmiller also
testified that Grindinger made the offer, that the Kixmillers accepted the
offer, and that they relied on the offer in deciding to purchase a new home.  Grindinger herself admitted that she offered
the rebate that day, that the Kixmillers accepted her offer that day, and that
she signed and initialed the listing agreement containing the rebate offer that
day and left the other copy with the Kixmillers.[7]  Grindinger=s
conduct, viewed by an objective standard, demonstrates a meeting of the minds
and an intent to contract.  See Best
Buy Co., 2006 WL 3438521, at *4; Komet, 40 S.W.3d at 601.

The Kixmillers=
subsequent conduct also demonstrates a meeting of the minds.  The Kixmillers testified that this $6,000
rebate offer Apushed [them] over the top@ in
deciding to purchase the Double Oak home. 
The Kixmillers took all necessary steps to close on the homes due, at
least in part, to the $6,000 rebate.  Had
the Kixmillers not intended to contract for the $6,000 rebate, they would not
have objected to its omission on the day scheduled for closing the sale of
their Bartonville home and the purchase of the Double Oak home.  After objecting to that omission, and after
Grindinger handwrote a note to Jon Kixmiller again reciting the $6,000 rebate
offer, the Kixmillers closed on both homes. 
The Kixmillers= conduct, viewed by an objective
standard, provides additional evidence of a meeting of the minds and an intent
to contract.  See Best Buy Co.,
2006 WL 3438521, at *4; New Caney Indep. Sch. Dist., 30 S.W.3d at 538.

Considering the evidence favorable to the trial
court=s
finding, and disregarding evidence to the contrary unless a reasonable
fact-finder could not, we hold that the evidence was legally sufficient to
establish that a meeting of the minds did occur.  See City of Keller, 168 S.W.3d at 827.








C.  Execution of the Contract 

Grindinger also argues that because the only
listing agreement containing the rebate offer was signed solely by herself, the
rebate agreement was not part of a properly executed contract and was not
binding under the statute of frauds.  The
Kixmillers argue that any statute of frauds argument is improper because
Grindinger failed to assert it as an affirmative defense, that the statute of
frauds is nevertheless satisfied, and that there was sufficient evidence for
the jury to find that the listing agreement containing the rebate offer was the
true listing agreement. 








We first
address Grindinger=s statute of frauds argument.[8]  The statute of frauds states that a binding
agreement is one that is in writing and signed by the party to be charged
with the agreement.  See Tex. Bus. & Com. Code Ann. '
26.01(a) (Vernon 2006); Knight v. Hicks, 505 S.W.2d 638, 642 (Tex. Civ.
App.CAmarillo
1974, writ ref=d n.r.e.) (applying statute of
frauds to listing agreements); Allison v. Means, 352 S.W.2d 789, 791
(Tex. Civ. App.CFort Worth 1961, writ ref=d
n.r.e.) (applying statute of frauds to listing agreements).  Here, the listing agreement that contained
the $6,000 rebate offer satisfies the 
statute of frauds because it was signed by GrindingerCthe
party to be charged with the agreement.  See
 Tex.
Bus. & Com. Code Ann. '
26.01.  Accordingly, here the statute of
frauds is not a defense to the Kixmillers=
enforcement of the rebate agreement against Grindinger.  See, e.g., Street v. Johnson, 96
S.W.2d 427, 429 (Tex. Civ. App.CAmarillo
1936, no writ) (explaining that "[w]hen the memorandum contains within
itself, all the particulars of a concluded contract, it need only be signed by
the party against whom it is sought to be enforced@).

There
was also sufficient evidence for the jury to find that the listing agreement
containing the rebate offer constituted the true agreement of the parties.  As outlined above, multiple versions of the
listing agreement were admitted into evidence, as well as the note handwritten
by Grindinger to the Kixmillers on the day of closing.  Deborah Kixmiller testified that when
Grindinger came to the Kixmillers= home to
discuss the listing agreements, she brought two preprinted listing agreements
with her.  At that meeting, the
Kixmillers and Grindinger discussed the purchase of a new home and the sale of
the Kixmillers= current home. 








A dispute arose at trial as to whether the
Kixmillers signed the versions of the listing agreement that did not contain
the rebate offer before Grindinger actually made the offer.  It was the jury=s job to
resolve this factual dispute, and the jury resolved it against Grindinger.  Ample evidence supports the jury=s
implied finding that the Kixmillers did not sign any listing agreement until
after Grindinger incorporated the commission reduction and the rebate into the
parties=
agreement.  The Kixmillers both testified
that Grindinger made the rebate offer that day at their house.  Grindinger testified that she made the rebate
offer that day as well.  The Kixmillers
both testified that they accepted that rebate offer.  Grindinger also testified that they accepted
the offer.  The Kixmillers both testified
that they relied on the rebate offer in deciding to purchase the Double Oak home,
implying that the Kixmillers did not execute the listing agreement before the
rebate offer was made.  Both Grindinger
and the Kixmillers also testified that Grindinger again offered the $6,000
rebate via handwritten note on the day of closing.








Considering
all of the evidence favorable to the jury=s
finding that the agreement containing the rebate was the official agreement
between the parties, and disregarding evidence to the contrary unless a
reasonable fact-finder could not, we hold that the evidence was legally
sufficient to support the jury=s
finding that the rebate offer was part of the agreement.  See City of Keller, 168 S.W.3d at
827.  Having held that the evidence is
legally sufficient to support the jury=s
implied findings in connection with special question number one that there was
a meeting of the minds and an enforceable contract, we overrule Grindinger=s first
issue.

V.  Conclusion

Because
we have determined that the evidence is legally sufficient to support the jury=s
finding in special question one, that the parties agreed that Grindinger would
rebate $6,000 to the Kixmillers in connection with the purchase of the Double
Oak home and would reduce her commission in connection with the sale of the
Bartonville home, we overrule Grindinger=s first
issue.








We need
not address Grindinger=s second issue because it
challenges only the jury=s findings on the Kixmillers=
alternative theory of recovery, DTPA.  See
Tex. R. App. P. 47.1.  The evidence supports the Kixmillers=
recovery under their breach of contract theory, so we need not address their
alternative recovery on their DTPA claim.[9]  See, e.g., Norwest Mortgage, Inc. v.
Salinas, 999 S.W.2d 846, 865 (Tex. App.CCorpus
Christi 1999, pet. denied) (holding that there is no need to address remaining
breach of contract issue where the trial court=s
judgment could be supported on the basis of a DTPA claim).  Likewise, we need not address Grindinger=s third
issue because it is a conditional issue, urging us to award her attorneys= fees in
the event we reverse the trial court=s
judgment.  Because we overrule Grindinger=s first
issue and do not address her second issue, the condition precedent to her third
issue does not exist.  We affirm the
trial court=s judgment. 

 

SUE WALKER

JUSTICE

 

PANEL
A:  CAYCE, C.J.; WALKER and MCCOY, JJ.

 

DELIVERED:  February 22, 2007

 











[1]See Tex. R. App. P. 47.4.





[2]Neither Grindinger=s issue nor the
associated argument specifies whether she is challenging only the legal
sufficiency of the evidence or both the legal and factual sufficiency.  But the prayer for relief in her brief urges
this court Ato sustain the legal
sufficiency issues, reverse the trial court judgment, and render judgment for
Grindinger in this action, including the attorneys= fees incurred in the
trial court and this Court.@ 
Accordingly, we will treat Grindinger=s first issue as challenging legal sufficiency
only.





[3]Grindinger later agreed
to reduce her commission from four percent to two percent.





[4]This $13,500 commission
reduction was a term that Grindinger and the Kixmillers negotiated after
Grindinger made the $6,000 rebate offer and is calculated from Grindinger=s agreement to again
reduce her commission from four percent to two percent. 





[5]Page two of this listing
agreement did contain the Kixmillers= initials, but the testimony at trial revealed
that this page was added separately after further negotiations.





[6]Special question number
one asked,

 

Did the parties agree
that Marlene Grindinger would rebate $6,000.00 to Jon and Deborah Kixmiller in
connection with the sale of the property located at 325 Oak Trail, Double Oak,
Texas, in addition to the reduced commission in connection with the sale of the
property located at 1640 Gibbons Road, South, Bartonville, Texas?

 

Question number two asked
whether Grindinger had breached this agreement, and the jury answered yes.  Neither party lodged objections to these
charge questions.





[7]There was also no dispute
that Grindinger again offered the $6,000 rebate to the Kixmillers on the day of
closing.





[8]Although Grindinger
failed to plead the statute of frauds, she argues that the issue was tried by
consent and therefore preserved for appeal. 
Compare Tex. R. Civ. P.
94 (requiring a pleading to preserve argument regarding an affirmative defense
or matter of avoidance) with Tex.
R. Civ. P. 67 (stating that issue tried by express or implied consent
alleviates burden to plead affirmative defense) and Nicol v. Gonzales,
127 S.W.3d 390, 393 (Tex. App.CDallas 2004, no pet.) (same).  For the reasons set forth below, regardless
of whether Grindinger preserved her statute of frauds issue, the statute of
frauds was satisfied here.  





[9]Although the jury found
for the Kixmillers on the DTPA claim, it entered a negative finding to the Aknowing@ question, and awarded
$6,000 on the DTPA claimCthe same amount it
awarded based on the breach of contract finding.